UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TIANTE DION SCOTT,

        Plaintiff,

   vs.

BEREGOVSKAY, et al.,

        Defendants.

1:17-cv-01146-LJO-GSA-PC

**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 20.)**

**THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT NOT EXCEEDING 25 PAGES**

## I.    BACKGROUND

Tiante Dion Scott ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On June 19, 2017, Plaintiff filed the Complaint commencing this action at the United States District Court for the Northern District of California.  (ECF No. 1.)  On August 24, 2017, the case was transferred to this court.  (ECF No. 6.)

The court screened the Complaint and issued an order on September 6, 2017, dismissing the Complaint for violation of Rule 8(a), with leave to file an amended complaint not exceeding 25 pages.  (ECF No. 11.)  On December 18, 2017, Plaintiff filed a First Amended Complaint that

was 55 pages in length. (ECF No. 17.) Plaintiff also filed a motion for permission to exceed the 25-page limit for the First Amended Complaint. (ECF No. 18.)

The court screened the First Amended Complaint and dismissed it on January 2, 2018, for violation of Rule 220 and failure to comply with the court's order limiting the complaint to 25 pages. (ECF No. 19.) Plaintiff was granted leave to file a Second Amended Complaint not exceeding 35 pages. (Id.) On January 23, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 20.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.    SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at Pelican Bay State Prison in Crescent City, California. The events at issue in the Second Amended Complaint allegedly occurred at North Kern State Prison in Delano, California.  Plaintiff names as defendants Olga Beregovskaya (MD), A. Shittu (MD), Ndukwe N. Odeluga (MD), J. Lewis (Deputy Director, CDCR), R. Robles (Surgeon), T. Guhl (RN), L. Krzysiak (MD), Banayan (MD), David Gines (MD), Karen Jose (RN), Gabriel (RN), C. Agbasi (LVN), A. Armendarez (RN), Oyeniyi (LVN), M. Cavanaugh (SRN), and S. Garza (SRN) (collectively, "Defendants").  A summary of Plaintiff's allegations follows.

On February 27, 2016, Plaintiff was attacked by inmate Beloney, and one of Beloney's associates stabbed Plaintiff in the neck.  Correctional officers (C/Os) ordered the inmates to get down on the ground and then ordered to return to their assigned housing.  Apparently, the C/Os did not notice the stab wound, which did not start to bleed until Plaintiff arrived at his cell.

On February 28, 2016, Plaintiff's neck was swollen and he could not lift his right arm. Plaintiff was again attacked by inmate Beloney.  The C/Os stopped the fight and the two inmates were placed in holding cages to be interviewed.  Defendant Karen Jose (LVN) interviewed Plaintiff in the cage while he was also in the presence of inmate Beloney.  Defendant Jose examined Plaintiff but did not see the wound on Plaintiff's neck and failed to document that Plaintiff told her he could not raise his right arm.  Plaintiff told defendant Jose that he needed a doctor for his neck wound, and she (Jose) asked Plaintiff, in front of inmate Beloney, why he needed the doctor and how he was wounded.  Plaintiff could not blame inmate Beloney's associate for his stab wound without placing himself at risk of harm on the prison yard because he would be labeled a snitch, so Plaintiff told defendant Jose that he was injured on the basketball court.  Defendant Jose told Plaintiff that his basketball injury was not relevant to her interview and he would have to submit a 7362 medical request form to be seen for that injury.  Plaintiff alleges that defendant Jose did not allow Plaintiff to keep his sensitive medical information private, nor did she (Jose) record on the 7219 medical incident form that Plaintiff complained of a neck and arm injury.   After the interview, both inmates were returned to their cells.

///

On February 29, 2016, Plaintiff again fought with inmate Beloney. The fight was stopped and the two inmates were placed in holding cages. Defendant C. Agbasi (LVN) interviewed the inmates. Again, because Plaintiff was in the presence of inmate Beloney, he could not privately inform the nurse about his neck wound. When asked why he needed to see the doctor, Plaintiff told defendant Agbasi that while playing basketball, someone with long fingernails punctured him. By now the wound was swollen and white pus bubbled from the puncture site. Plaintiff wanted to privately see a doctor for antibiotics, so he told defendant Agbasi, "I think the puncture might be infected by [a] staph infection." ECF No. 20 at 11:25-26. Defendant Agbasi took a closer look at Plaintiff's neck and called over defendant Armendarez (RN) to also look. Defendant Armendarez left and returned telling Plaintiff she (Armendarez) had spoken with defendant Dr. Gines, and told him (Gines) she thought Plaintiff's wound was an ingrown hair and needed antibiotics. Plaintiff demanded to see the doctor and defendant Agbasi told him to fill out a 7362 medical request form. Defendant Agbasi completed Plaintiff's examination. Plaintiff told defendant Agbasi that he could not raise his arm and demanded that Agbasi record on the 7219 form that his arm was injured, which Agbasi did. Plaintiff was returned to his cell. Dr. Gines prescribed an antibiotic for an ingrown hair without seeing Plaintiff, which Plaintiff alleges was negligent. Plaintiff was not allowed privacy to discuss his sensitive medical needs.

On March 1, 2016, Plaintiff was attacked by two other inmates, lacerated, and taken to the emergency room. Medical personnel focused on the lacerations and did not treat Plaintiff's neck, although Plaintiff told staff that he had been stabbed in his neck. This mistake was made by defendant LVN Oyeniyi. When interviewed, Plaintiff told defendant S. Garza (SRN) that he was stabbed, which Garza recorded on a medical form. Plaintiff contends that a systematic deficiency exists, because several nurses have failed to record what inmates told them. After being interviewed by defendants Garza and Oyeniyi, defendant Dr. Olga Beregovskaya operated on Plaintiff and applied seven sutures to his face, but did not acknowledge Plaintiff's arm injury. Plaintiff informed defendant Beregovskaya that he had also been stabbed, thought the stab wound was infected, and could not raise his arm. Dr. Beregovskaya asked Plaintiff to raise his arm, which Plaintiff attempted to do, and the doctor became frustrated and said, "You are not raising

your arm because you don't want to." ECF No. 20 at 16:7. Plaintiff exploded in anger and afterward Dr. Beregovskaya looked at his neck, stating, "It does not look like a stab wound." ECF No 20 at 16:16-17. By this time, the wound was swollen and whitish looking, and Plaintiff said, "It's changing colors, it's infected." ECF No. 20 at 16:17. The doctor looked on the computer and noted that Plaintiff was treated for an ingrown hair, and Plaintiff said that was inaccurate and that he had been stabbed. Dr. Beregovskaya told Plaintiff his antibiotics would be changed and gave Plaintiff x-rays, which did not show metal in his neck. When Plaintiff asked if the x-ray could see glass or plastic, she (Beregovskaya) said, "No" and told Plaintiff she was not going to order an MRI because of the results of the x-rays. Plaintiff asked Dr. Beregovskaya if she would clean out his neck wound, and she responded that she was not going to reopen the wound.

Dr. Beregovskaya made a report that stated she did not think Plaintiff was stabbed in the neck, so the C/Os placed Plaintiff in administrative segregation instead of the infirmary. Plaintiff was placed on suicide watch, where he was only allowed one blanket and sheet, and no pillow. Plaintiff was extremely cold and his neck hurt. Dr. Beregovskaya only ordered Plaintiff 10 days of Ibuprofen 600mg, which was not strong enough. The first night Plaintiff had no antibiotics or pain medication. Plaintiff contends that Dr. Beregovskaya should have placed him in the infirmary where he would have better medical care. Plaintiff got little sleep and had nightmares.

The next day, March 2, 2016, Plaintiff was not given medications in the morning or at noon. The nurse explained that sometimes it takes two days for medications to register. In the evening, Plaintiff received Clindamycin but nothing for pain, so he suffered another night of cold, pain, and nightmares. No one came to clean Plaintiff's sutures.

On March 3, 2016, the nurse gave Plaintiff another dose of Clindamycin but no pain medication. Plaintiff submitted forms to be given pain medication and his asthma inhaler, to have his wound cleaned, and stating that his arm was damaged. The wound on Plaintiff's face was irritated and developed a rash.

On March 3, 2016, Plaintiff filed healthcare grievance 602HC #NKSP-HC-16027252, complaining that the nurses and doctors should be retrained, listen to patients, and interview

patients in privacy. On April 7, 2016, Plaintiff's grievance was partially granted at the first level of review. Defendant Dr. A. Shittu granted physical therapy but denied the requests for doctors and nurses to be retrained, for patients to be interviewed in privacy, and for an MRI. Dr. Shittu had the responsibility to correct the systemic deficiencies in procedures, but he chose not to, further contributing to Plaintiff's suffering.

On March 4, 2016, defendant M. Cavanaugh (SRN) and T. Guhl (RN) talked to Plaintiff about his problems and injuries, with respect to Plaintiff's healthcare appeal. Guhl was stand-offish and made mistakes when repeating Plaintiff's medical needs. Plaintiff was told he would see a doctor on March 8, 2016.

On March 8, 2016, defendant E. Flores (MD) saw Plaintiff to examine his injuries and address his 602 healthcare grievance. The report from defendant Guhl still contained errors, which Plaintiff corrected for defendant Flores. Plaintiff alleges that defendant Guhl's mistakes in listening and documenting information is a systematic or procedural problem at NKSP, which defendant Deputy Director J. Lewis refuses to correct. Dr. Flores ordered Plaintiff new antibiotics and scheduled a date to remove the sutures. Removal of the sutures was overdue because of Dr. Beregovskaya's neglect of duties. Dr. Flores also prescribed physical therapy and pain medication.

On March 9, 2016, Plaintiff started new antibiotics called Sulfamethoxazole/Trimetho-rim. On March 10, 2016, Plaintiff ran out of Ibuprofen and had not been given a refill. On March 11, 2016, Plaintiff finished the Clindamycin 150g capsules and still had not been called in to have his sutures removed, so he sent a 7362 medical request form. By now, the skin around the sutures looked whitish and flaky and felt irritated, burning, and itchy.

On March 15, 2016, Plaintiff's sutures were removed, which was very painful because the removal was overdue and the process of healing had caused the sutures to become embedded in his skin. On March 21, 2016, the lump on Plaintiff's neck still caused him pain. He attended physical therapy. On March 28, 2016, Plaintiff was supposed to see the doctor, but instead he was left outside for 1 1/2 hours waiting, where he was exposed to Valley Fever spores. On March

///

30, 2016, he was seen by defendant Dr. R. Robles for a quick examination of Plaintiff's face but not his neck. The doctor interrupted Plaintiff and did not listen to him. Plaintiff's physical therapy prescription was extended and his arms were measured. His right arm had always been stronger and longer but was now weaker and shorter. On April 24, 2016, Plaintiff filed healthcare appeal 602HC #NKSP-HC-16027462, complaining of not being seen for his stab wound.

On May 4, 2016, Plaintiff saw defendant Dr. Robles again, who asked Plaintiff if his arm was improving with therapy. Plaintiff felt it was improving, but Dr. Robles wrote on his report that Plaintiff's arm was "improved," which was not the case because his arm was not already healed. Plaintiff still has trouble with his arm, which sometimes feels as if there is a pinched nerve, and which pops out with certain movement and limited rotation when this happens.

On May 18, 2016, Plaintiff saw defendant Dr. Robles again about Plaintiff's appeal. Dr. Robles looked at Plaintiff's neck. By now, the swelling was gone and Plaintiff could feel and see the lump in his neck where he had been stabbed. Plaintiff asked the doctor to feel his neck, but the doctor refused and did nothing to schedule an MRI. Dr. Robles told Plaintiff that his request for an orthopedic consultation, ordered by Dr. Campomeneis [not a defendant], was denied. Defendant Robles abused his authority because under CDCR rules and regulations he was required to refer inmates to a private physician or hospital, and to schedule Plaintiff for a CT-scan or MRI.

Plaintiff alleges that defendants LVN Karen Jose, RN T. Guhl, RN Gabriel, LVN C. Agbasi, RN Armenadarez, LVN Oyeniyi, and SRN S. Garza are all of the nurses who neglected to accurately document Plaintiff's old and new injuries. Plaintiff alleges that these nurses and the system of recording inmates' injuries need to change at North Kern State Prison and the CDCR. As the supervisor of these nurses, M. Cavanaugh had a duty to correct their errors once enlightened to the systemic error, and she did not, but attempted to suppress documents that addressed the issue.

On June 14, 2016, Plaintiff requested an Olsen review of his medical records, to see why his MRI and orthopedic consultation were denied. On July 11, 2016, Plaintiff saw Dr. Robles

///

again to follow up on Plaintiff's neck and shoulder. Plaintiff told the doctor he was still in pain and needed his Ibuprofen refilled. Plaintiff's Acyclovir was also refilled.

On July 26, 2016, Plaintiff was transferred from North Kern State Prison and arrived at Pelican Bay State Prison on July 27, 2016.

On August 8, 2016, Plaintiff's appeal 602HC #NKSP-HC-16027252 was partially granted. Defendant Dr. Odeluga granted Plaintiff an MRI on his neck and denied the MRI on his right arm. However, by then Plaintiff was at Pelican Bay State Prison and medical staff there refused to honor the referral. Plaintiff alleges that defendant Odeluga failed to place a medical hold, as required by CDCR, to complete Plaintiff's medical needs before he was moved to another prison. This placed Plaintiff in extreme danger. Plaintiff contends that he should not have been sent to a super max dangerous prison because his prison history does not support this classification. Defendant J. Lewis denied Plaintiff's appeal and chose not to modify the procedure for interviewing how inmates are interviewed regarding medical sensitivities. Defendant J. Lewis refused to offer Plaintiff medical assistance, depriving Plaintiff of due process.

On December 19, 2016, at Pelican Bay State Prison, Plaintiff was seen by the mobile CT-scan unit and it was discovered that Plaintiff had a foreign object lodged against his right jugular vein next to his carotid artery. Plaintiff was scheduled for surgery on March 7, 2017. Plaintiff had a piece of plastic tube surgically removed and two months of physical therapy for his right arm.

Plaintiff requests monetary damages, injunctive relief, and declaratory relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A. **Improper Venue for Claims Arising at Pelican Bay State Prison**

The events at issue in the Second Amended Complaint allegedly occurred at North Kern State Prison in Delano, California, and Pelican Bay State Prison in Crescent City, California. Plaintiff's claims arising out of events at North Kern State Prison are proper in this district. However, venue for any claims arising out of events at Pelican Bay State Prison are not proper

in this district, and those claims may not be pursued in this action.  See Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue *sua sponte*); see also Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding severance).  If Plaintiff wishes to pursue any claims arising at Pelican Bay State Prison he may file a new case in the Northern District of California.

### B.    Joinder of Claims and Defendants -- Rules 18(a) & 20(a)

Plaintiff's Second Amended Complaint recites various encounters with prison officials, some which are not related to others.  Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members.

"The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Rule 20 of the Federal Rules of Civil Procedure provides in relevant part that "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and  (B) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2).

Plaintiff's Second Amended Complaint includes these unrelated claims:  (1) Medical claims and all other claims against defendants Beregovskaya, Shittu, Odeluga, Lewis, Robles, Guhl, Krzysiak, Banayan, Gines, Gabriel, Armendarez, Oyeniyi, and Cavanaugh; (2) Claim concerning conditions in administrative segregation on suicide watch; (3) Due Process claim

concerning transfer to Pelican Bay State Prison; and (4) Medical privacy and failure-to-protect claims against defendants Jose and Agbasi, concerning their initial interviews of Plaintiff in the presence of inmate Beloney. Plaintiff will not be permitted to pursue unrelated claims in this action. In amending, Plaintiff should decide which related claims he wishes to pursue and re-allege those claims only. If Plaintiff wishes to pursue all of his claims, he may file new cases bringing the unrelated claims. If Plaintiff's Third Amended Complaint also violates Rule 18(a) or Rule 20(a) despite this admonition, the Court will decide which claims shall proceed.

## C. <u>Supervisory Liability</u>

Plaintiff brings claims against defendants who hold supervisory positions, such as SRN M. Cavanaugh who supervises nurses. Plaintiff alleges that as supervisor of the nurses, M. Cavanaugh had a duty to correct their errors. However, the mere fact that defendant Cavanaugh was the nurses' supervisor does not make Cavanaugh liable for the nurses' errors.

A plaintiff may state a claim against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011). "There is no *respondeat superior* liability under [§] 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Liability under section 1983 is based only on the defendant's individual actions—not vicarious liability. <u>Iqbal</u>, 556 U.S. at 676–77; <u>Starr</u>, 652 F.3d at 1207. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." <u>Starr</u>, 652 F.3d at 1208 (quoting <u>Watkins v. City of Oakland</u>, 145 F.3d 1087, 1093 (9th Cir. 1998)). A defendant may be liable as a supervisor "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Id.</u> at 1207 (quoting <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)).

Therefore, to the extent that any of the Defendants are supervisory personnel, Plaintiff's Complaint fails to state a claim under a vicarious liability or *respondeat superior* theory.

///

**D.      Personal Participation – Dr. Krzysiak and Dr. Banayan**

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.

In the Second Amended Complaint, Plaintiff fails to allege facts showing that defendants Dr. Krzysiak or Dr. Banayan personally acted against him.  In fact, Plaintiff fails to attribute *any* personal act to either of these two defendants.  Plaintiff cannot state a claim against these defendants unless he demonstrates in his allegations that each of them, identified by name, personally acted or failed to act, violating Plaintiff's rights.  Liability may not be imposed under a theory of *respondeat superior*, and there must exist some causal connection between the conduct of each named defendant and the violation at issue.  Iqbal, 556 U.S. at 676-77; Lemire v. California Dept. of Corrections and Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (*en banc*); Starr, 652 F.3d at 1205-08, cert. denied, 132 S.Ct. 2101 (2012).

Moreover, Plaintiff may not attribute liability to a group of defendants, but must name a defendant and "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor, 880 F.2d at 1045.  Plaintiff may not attribute liability to "nurses" or "C/Os" as a group, but must name individual nurses and C/Os.

Therefore, Plaintiff fails to state any claims against defendants Dr. Krzysiak or Dr. Banayan.  Plaintiff shall be granted an opportunity to amend the complaint, to cure this deficiency.

**E.      Due Process -- Administrative Segregation and Transfer**

Plaintiff alleges that he should not have been placed in administrative segregation while he was in need of medical care, and that he should not have been transferred to a super max prison.

///

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

### 1.    **Administrative Segregation**

Plaintiff alleges that he should have been placed in the infirmary instead of in administrative segregation when he required medical care. Plaintiff alleges that he was placed on suicide watch, where he was only allowed one blanket and sheet, and no pillow. Plaintiff was extremely cold and his injured neck hurt. During the first two days, he did not have his antibiotics or pain medications. Plaintiff alleges that he got little sleep and had nightmares, and he would have had better medical care in the infirmary

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of the SHU. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Courts have found the existence of atypical and significant hardships in a very limited scope of cases. See, e.g., Wilkinson, 545 U.S. at 221–24 (holding inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole

consideration); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078-79 (9th Cir. 2003) (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest). While unusually long periods of segregation in violent, overcrowded or dangerous conditions may be sufficient to constitute a cognizable due process claim, Plaintiff makes no such specific allegations here regarding his confinement in administrative segregation. <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003) (noting without deciding that a two-year period of segregation in violent and overcrowded conditions while undergoing forced psychiatric evaluation may constitute "atypical and significant hardship"). "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted).

Plaintiff's allegations do not reflect "atypical and significant hardship." <u>See</u> <u>Sandin</u>, 515 U.S. at 484, 115 S.Ct. 2293 (transfer to more restrictive conditions of confinement is not, by itself, sufficient to indicate atypical and significant hardship); <u>Serrano</u>, 345 F.3d at 1078 (placement in Ad–Seg does not generally amount to atypical and significant hardship). Plaintiff's hardships in administrative segregation, although significant, are not atypical and do not rise to the level of hardships grave enough to state a cognizable due process claim.

### 2. <u>Transfer to Pelican Bay State Prison</u>

Plaintiff alleges that he was transferred from North Kern State Prison to Pelican Bay State Prison before his medical care at North Kern State Prison was completed. Plaintiff alleges that he should not have been transferred to a "super max dangerous prison," because his prison history does not support this classification. Plaintiff also alleges that his referral for an MRI by Dr. Odeluga at North Kern State Prison was not honored at Pelican Bay State Prison.

Under the Due Process Clause, an inmate has no liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." <u>Sandin</u>, 515 U.S. at 478 (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976)). That is, prisoners have no liberty interest in avoiding more adverse conditions of

14

confinement.  <u>Wilkinson</u>, 545 U.S. at 221–22; <u>see</u> also <u>Rizzo v. Dawson</u>, 778 F.2d 527 (9th Cir. 1985) (holding prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights).  Inmates therefore have no freestanding constitutional right to be housed in a particular state, prison, unit, or cell within a prison when that housing placement does not affect the term of his or her incarceration.  <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244–45 (1983) (holding no liberty interest to incarceration in a particular state or protection from transfer from one institution to another); <u>Meachum</u>, 427 U.S. at 224–25 (holding no liberty interest to incarceration in a particular prison within a state).

Plaintiff provides little comparison of the conditions of confinement at Pelican Bay State Prison suggesting atypical and significant hardship.  <u>See</u> <u>Wilkinson</u>, 545 U.S. at 222–223; <u>Myron</u>, 476 F.3d at 718.  He alleges that his referral for an MRI at North Kern State Prison was not honored at Pelican Bay State Prison, but he alleges no specific facts showing that he has been denied such care.  That is, Plaintiff details nothing showing that the duration or intensity of the conditions of confinement at Pelican Bay State Prison rise to the level of atypical and significant hardship, or that his transfer will affect the duration of his sentence.

Moreover, the denial of health care should be addressed under the Eighth Amendment's prohibition against cruel and unusual punishment, rather than as support for a due process claim. <u>See</u> <u>Albright</u> v. <u>Oliver</u>, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting <u>Graham</u>,490 U.S. at 395.

Because Plaintiff fails to allege a federal or state-created liberty interest that entitles him to due process before transfer, he fails to state a due process claim related to his transfer from one prison to another, and this claim is dismissed with leave to amend.

///

///

**F.    Conditions of Confinement -- Administrative Segregation**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  The circumstances, nature, and duration of the

deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson</u>, 217 F.3d at 731. Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." <u>Farmer</u>, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. <u>Id.</u> at 837-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. <u>Farmer</u>, 511 U.S. at 835; <u>Frost</u>, 152 F.3d at 1128.

Plaintiff alleges that he was only given a blanket and sheet, and no pillow, when he was placed in administrative segregation on suicide watch. During the first two days, Plaintiff did not have his antibiotics or pain medication. Plaintiff alleges that he was extremely cold, his injured neck hurt, he got little sleep, and he had nightmares.

These conditions in administrative segregation do not rise to the level of an Eighth Amendment violation because they are not sufficiently grave and did not deny Plaintiff the minimal civilized measure of life's necessities. Further, Plaintiff has not alleged that he was kept under those conditions for an extended time period or that any defendant knew of the conditions, understood that Plaintiff was at substantial risk of serious harm under those conditions, and acted unreasonably. Therefore, Plaintiff fails to state a claim for adverse conditions of confinement under the Eighth Amendment.

### G. <u>Prison Appeals Process -- Due Process</u>

Some of Plaintiff's allegations against defendants Dr. Shittu, Dr. Odeluga, J. Lewis, Dr. Robles, and M. Cavanaugh pertain to their review and handling of Plaintiff's inmate appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." <u>Sandin</u> , 515 U.S. at 483-84. Liberty interests

created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George, 507 F.3d at 609-10; Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996); Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that defendants Shittu, Odeluga, Lewis, Robles, and Cavanaugh failed to properly process his appeals fail to state a cognizable claim against them.

## H.     Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (<i>en banc</i>) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. <u>McGuckin</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Id.</u> at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

///

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has shown that he had serious medical needs, because during an altercation with another inmate, he was stabbed in the neck and injured his right arm. Plaintiff's neck wound was not healing properly, his right arm was painful, and he could not raise his right arm. These allegations are sufficient to satisfy the first part of the test for an Eighth Amendment medical claim.

However, Plaintiff fails to allege facts showing that any of the Defendants acted with deliberate indifference to his serious medical needs. Plaintiff alleges that doctors and nurses did not listen to Plaintiff or take him seriously when he told them about his injuries and medical problems, did not accurately document some of his medical information, treated him with indifference or negativity, failed to order timely medical tests, failed to order effective pain medication, failed to place a medical hold on Plaintiff instead of transferring him, waited too long to remove sutures, disagreed with Plaintiff's diagnoses, refused to allow Plaintiff to see the doctor, misdiagnosed his ailments, and failed to properly examine him. While these are serious allegations, they do not rise to the level of deliberate indifference because Plaintiff has not shown that any of the Defendants drew the inference that there was a substantial risk of serious harm to Plaintiff's health and yet deliberately ignored the risk and acted unreasonably or failed to act to reduce the risk of harm. Plaintiff has not shown that any of the Defendants knew he was in serious danger. According to Plaintiff's allegations, the Defendants did not know that a piece of plastic was lodged in Plaintiff's neck, and Plaintiff's facts do not show that any of the Defendants purposely withheld appropriate treatment while knowing that Plaintiff was at risk of serious harm. At most, Plaintiff states a claim for negligence, which is not actionable under § 1983. "[E]ven gross negligence is insufficient to establish a constitutional violation." Toguchi, 391 F.3d at 1060.

Therefore, Plaintiff fails to state a medical claim under the Eighth Amendment against any of the Defendants. Plaintiff shall be granted leave to amend the complaint to cure the deficiencies in this claim found by the court.

## I.    Defendants Jose and Agbasi -- Medical  Privacy and Failure to Protect

Plaintiff alleges that his safety was jeopardized, and his right to medical privacy was violated, when defendants Karen Jose (RN) and C. Agbasi (LVN) asked Plaintiff, in front of another inmate, how he was injured and why he needed to see the doctor.  Plaintiff alleges that Defendants placed him at risk of harm because if he had truthfully answered the Defendants' questions in front of the other inmate, he would have been labeled a snitch, which would have jeopardized his safety.

### 1.    Medical Privacy

To state a claim under § 1983, Plaintiff must allege that Defendants deprived him of rights secured by the Constitution or federal law.  Long, 442 F.3d at 1185; see also Marsh, 680 F.3d at 1158.   The United States Supreme Court has never held that the Constitution protects an individual's right to informational privacy.  See NASA v. Nelson, 562 U.S. 134, 131 S.Ct. 746, 751, 178 L.Ed.2d 667 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in Whalen [v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) ] and Nixon [v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) ]."); see also NASA, 562 U.S. at 160 (Scalia, J., concurring) ("A federal constitutional right to 'informational privacy' does not exist."). It is unsurprising, then, that the scope of a prisoner's constitutional right to the privacy of his health information is not clearly defined. See, e.g., Ismail v. Fulkerson, No. SA CV 10–00901–VBF–AJW, 2014 WL 3962488, at *14 (C.D. Cal. Aug.12, 2014) (noting that the relevant Ninth Circuit jurisprudence is "unsettled and confusing").

Even assuming that Plaintiff has a Constitutional right to protect his private information, Plaintiff fails to state a claim against defendants Karen Jose (RN) or C. Agbasi (LVN) for violating that right.    There are no facts showing that any of Plaintiff's private information was disclosed.  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"

///

Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). Here, Plaintiff shows no act by defendants Jose or Agbasi that caused the disclosure of Plaintiff's private information.

### 2.    **Failure to Protect -- Eighth Amendment Claim**

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Plaintiff's claim that defendants Karen Jose (RN) and C. Agbasi (LVN) failed to protect him from harm fails. Plaintiff has not shown that either of the defendants knew they were placing him at substantial risk of serious harm when they asked him why he needed to see the doctor. Moreover, Plaintiff has not shown that he suffered any harm as a result of their conduct.

Therefore, Plaintiff fails to state a claim against defendants Karen Jose (RN) and C. Agbasi (LVN) for violating Plaintiff's right to privacy or for failing to protect him from harm.

### J.    **State Law Claims**

Plaintiff alleges that Defendants have violated CDCR or prison rules and regulations. Plaintiff is informed that violation of state regulations, rules and policies of the CDCR, or other state law, such as negligence, is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a

deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court fails to find any cognizable federal claims in the Second Amended Complaint. Therefore, Plaintiff's state law claims fail.

**K.    Equal Protection**

Plaintiff alleges that defendants Dr. Shittu and Dr. Odeluga denied Plaintiff "equal protection of medical care and constitutional rights to equal protection of laws and due process" when they denied Plaintiff's request for an MRI on his neck and right arm.

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate

state purpose.  Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### L.  **Prison Practice or Policy**

Plaintiff alleges that there are systematic deficiencies in some of the medical staff's practices or policies that interfere with medical care at North Kern State Prison.  Plaintiff alleges that doctors and nurses refuse to consider old injuries when they are treating inmates for new injuries, only address the inmate's complaint written on the medical request without also addressing other medical needs, and neglect to record everything the inmate tells them.  Plaintiff alleges that defendant Dr. Shittu knew that doctors and nurses need to be re-trained and that patients need to be interviewed in privacy, but he chose not to correct these systemic deficiencies, further contributing to Plaintiff's suffering.  Plaintiff also alleges that defendant J. Lewis, Deputy Director of the CDCR, refuses to correct the nurses' practices of failing to listen to inmates and failing to accurately document information.  He alleges that defendants Jose, Guhl, Gabriel, Agbasi, Armenadarez, Oyeniyi, and Garza are the nurses who failed to accurately document Plaintiff's old and new injuries, and that defendant Cavanaugh breached her duty to correct their errors once enlightened to the systemic error.

Plaintiff's complaint fails to allege facts showing that a pattern of unconstitutional medical care existed at the time of his alleged mistreatment which would have provided notice to supervisory staff that nurses and doctors were rendering inappropriate treatment. Plaintiff's allegations against individual defendants in connection with Plaintiff's medical condition do not raise an inference that there was inadequate training and/or inadequate supervision for purposes of a supervisory liability claim.  See Stanley v. Goodwin, 475 F. Supp. 2d 1026, 1037 (D. Haw. 2006), aff'd, 262 Fed.Appx. 786 (9th Cir. 2007) (identifying a single incident does not meet the plaintiff's high burden of showing that the supervisor's indifference amounts to an authorization of the offensive practice); Doe v. City of San Diego, 35 F. Supp. 3d 1214, 1228 (S.D. Cal. 2014) ("[T]he Court cannot find any case which imposes personal liability on a supervisor for having knowledge of a single prior act of misconduct on the part of a subordinate."); see also Marsh, 680 F.3d at 1159) (allegations of an isolated instance of a constitutional violation are insufficient

to support a "failure to train" theory). Moreover, there are no facts showing that the delay in Plaintiff's medical treatment was due to a policy, practice, or custom of the prison or the CDCR.

Therefore, Plaintiff fails to state a claim with regard to policies and practices followed at North Kern State Prison.

## M. **Injunctive Relief and Mootness**

Plaintiff requests a court order requiring all named Defendants "to record accurately a patient's injuries and change the policy of nurses interviewing inmates in the presence of other inmates" and to "mandate [that] when an inmate asks to see a doctor, after a fight, it does not turn into an interrogation." ECF No. 20 at 7 ¶1, 6:1-6.

Plaintiff's transfer from North Kern State Prison to Pelican Bay State Prison renders this claim for injunctive relief moot because Plaintiff is no longer subject to Defendants' conduct at North Kern State Prison. Where the prisoner is challenging conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). Here, Plaintiff has not demonstrated a reasonable likelihood that he will be returned to North Kern State Prison and subjected to the practices at issue. Therefore, Plaintiff's request for injunctive relief against Defendants at North Kern State Prison is moot.

## V. CONCLUSION AND ORDER

The court finds that Plaintiff's Second Amended Complaint fails to state a cognizable claim under § 1983 against any of the Defendants. The court will dismiss the Second Amended Complaint and grant Plaintiff leave to file a Third Amended Complaint not exceeding 25 pages, curing the deficiencies in his claims found by the court. Twenty-five pages are sufficient for Plaintiff to set forth his cognizable claims, particularly since the court lacks venue over any claims arising at Pelican Bay State Prison, and some of Plaintiff's claims are unrelated and cannot be brought in the same lawsuit. Before preparing the Third Amended Complaint, Plaintiff is advised to review the standards and analysis in this order and to only allege related claims which

he believes are likely to succeed. For each claim and defendant, Plaintiff should consider whether he can allege facts showing what the defendant did that led to the deprivation of Plaintiff's constitutional rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions. Id. at 676-77 (emphasis added).

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Accordingly, the court will provide Plaintiff with an opportunity to file a Third Amended Complaint not exceeding 25 pages. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file the Third Amended Complaint within thirty days.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George, 507 F.3d at 607 (no "buckshot" complaints). Plaintiff is also advised that he has not been granted leave to include allegations of events occurring after the initiation of this lawsuit on June 19, 2017.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F 3d. at 907 n.1 (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint is dismissed for failure to state a claim, with leave to amend;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Plaintiff is granted leave to file a Third Amended Complaint not exceeding 25 pages, within **thirty (30) days** from the date of service of this order;

4. Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:17-cv-01146-LJO-GSA-PC; and

5.	If Plaintiff fails to file a Third Amended Complaint in compliance with this order within thirty days, this case may be dismissed with prejudice for failure to state a claim.

IT IS SO ORDERED.

Dated:   **September 19, 2018**	           **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE