UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANTE DION SCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>BEREGOVSKAYA, et al.,<br><br>Defendants. | 1:17-cv-01146-LJO-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br>**(ECF No. 25.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS** |

**I.  BACKGROUND**

Tiante Dion Scott ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On June 19, 2017, Plaintiff filed the Complaint commencing this action at the United States District Court for the Northern District of California.  (ECF No. 1.)  On August 24, 2017, the case was transferred to this court.  (ECF No. 6.)

1

The court screened the Complaint and issued an order on September 6, 2017, dismissing the Complaint for violation of Rule 8(a), with leave to file an amended complaint not exceeding 25 pages. (ECF No. 11.) On December 18, 2017, Plaintiff filed a First Amended Complaint that was 55 pages in length. (ECF No. 17.) Plaintiff also filed a motion for permission to exceed the 25-page limit for the First Amended Complaint. (ECF No. 18.)

The court screened the First Amended Complaint and dismissed it on January 2, 2018, for violation of Rule 220 and failure to comply with the court's order limiting the complaint to 25 pages. (ECF No. 19.) Plaintiff was granted leave to file a Second Amended Complaint not exceeding 35 pages. (Id.) On January 23, 2018, Plaintiff filed the Second Amended Complaint. (ECF No. 20.)

On November 19, 2018, the court screened the Second Amended Complaint and dismissed it for failure to state a claim, with leave to amend. (ECF No. 22.) On November 19, 2018, Plaintiff filed the Third Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 25.)

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken

as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the Third Amended Complaint allegedly occurred at North Kern State Prison in Delano, California. Plaintiff names as defendants Olga Beregovskaya (MD), David Gines (MD), C. Agbasi (LVN), and A. Armendarez (RN) (collectively, "Defendants"). A summary of Plaintiff's allegations follows.

On February 27, 2016, Plaintiff was attacked by inmate Beloney, and one of Beloney's associates stabbed Plaintiff in the neck. Correctional officers (C/Os) ordered the inmates to get down on the ground and were ordered to return to their assigned housing. Apparently, the C/Os did not notice the stab wound which did not start to bleed until Plaintiff arrived at his cell.

On February 28, 2016, Plaintiff's neck was swollen and he could not lift his right arm. Plaintiff was again attacked by inmate Beloney. The C/Os stopped the fight and the two inmates were placed in holding cages side-by-side to be interviewed by a Registered Nurse [not a defendant] and Correctional Officer [not a defendant], without seeing a doctor even after Plaintiff asked to see one.

On February 29, 2016, Plaintiff again fought with inmate Beloney. The fight was stopped and the two inmates were placed in holding cages. Defendant C. Agbasi (LVN) interviewed the inmates. Because Plaintiff was in the presence of inmate Beloney he could not privately inform the nurse about his neck wound. When asked how he was injured, Plaintiff told defendant Agbasi that while playing basketball someone with long fingernails punctured him. By now the wound was swollen and white pus bubbled from the puncture site. Plaintiff wanted to privately see a

doctor for antibiotics, so he told defendant Agbasi, "I think the puncture might be infected by [a] staph infection." 3ACP at 9:19. Defendant Agbasi took a closer look at Plaintiff's neck and called over defendant Armendarez (RN) to also look. Defendant Armendarez left and returned, telling Plaintiff she (Armendarez) had spoken with defendant, Dr. Gines, and told him (Gines) she thought Plaintiff's wound was an ingrown hair and needed antibiotics. Plaintiff demanded to see the doctor and defendant Agbasi told Plaintiff to fill out a 7362 medical request form. Defendant Agbasi completed Plaintiff's examination. Plaintiff told defendant Agbasi that he could not raise his arm and demanded that Agbasi record on the 7219 form that his arm was injured, which Agbasi did. Plaintiff was returned to his cell.

According to California regulations and CDCR rules, defendants Agbasi and Armendarez were required to interview Plaintiff in private, record all of his concerns, take his vital signs, assess whether he was injured, handle sensitive and confidential information with discretion, and follow other guidelines required under the regulations. Plaintiff alleges that Agbasi and Armendarez were negligent in their legal duty to preserve Plaintiff's safety by not interviewing Plaintiff in a private area without interruption. They did not accurately provide a detailed and reliable assessment to the doctor, especially since it would be later discovered that Plaintiff had a piece of shank lodged against his carotid artery. Plaintiff was prescribed a series of mediations for the infection on his neck for two months. The infection returned because there was a foreign object still lodged in Plaintiff's neck.

Dr. Gines was also required to follow guidelines found in CDCR rules and California regulations when treating Plaintiff. He prescribed an antibiotic for an ingrown hair without seeing Plaintiff, which Plaintiff alleges was negligent. Dr. Gines did not ask Plaintiff if he had any medical allergies, and Plaintiff has asthma. He should have seen Plaintiff as an emergency walk-in patient. Dr. Gines's deficient documentation of his alleged examination and prescription were relied upon by defendant Dr. Olga Beregovskaya, causing her to disregard Plaintiff's concerns of his severely injured arm and stab wound. Dr. Beregovskaya had a legal responsibility to accurately document Plaintiff's complaints, and to provide reasonable and necessary medical care, pursuant to CDCR Rules and California regulations.

On March 1, 2016, Plaintiff was attacked again by different inmates than on February 27, 2016, sending Plaintiff to the emergency room with a laceration. Dr. Beregovskaya saw Plaintiff as a patient and operated on him to close the laceration with seven stitches. She did not attempt to treat Plaintiff's existing stab wound even after Plaintiff told her he had been stabbed. Plaintiff's records state that he had a mass on the right side of his neck. Plaintiff informed Dr. Beregovskaya about his arm, and she attempted to assess the injury. She instructed Plaintiff to lift his arm, which he attempted, but it was very painful. Dr. Beregovskaya told Plaintiff he was not raising his arm because he didn't want to. Plaintiff became upset and told her he did not want her sympathy, was not there to flirt, and would not tell her his problems except that she was a doctor and he needed care. She ignored Plaintiff's statement that he was in a fight four days in a row, in extreme pain, was not sleeping, and was fatigued from loss of blood and infections. Dr. Beregovskaya again looked at Plaintiff's neck and said it did not look like a stab wound. Plaintiff responded that it was changing colors and was infected. She took x-rays which did not show metal in Plaintiff's neck. He asked whether an x-ray could show glass or plastic, and she said no. Dr. Beregovskaya told Plaintiff his antibiotics would be changed. Plaintiff asked Dr. Beregovskaya if she would clean out his neck wound and she responded that she was not going to reopen the wound. Plaintiff's arm was later found to have a torn rotator cuff and bicep tear. The piece of plastic shank remained impaled in Plaintiff's jugular vein, lateral to the carotid artery.

Plaintiff requests monetary damages, injunctive relief, and declaratory relief.

**IV. PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

///

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.  **Eighth Amendment Medical Claim**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

///

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has shown that he had serious medical needs, because during an altercation with another inmate he was stabbed in the neck and injured his right arm. Plaintiff's neck wound was not healing properly, his right arm was painful, and he could not raise his right arm. These allegations are sufficient to satisfy the first part of the test for an Eighth Amendment medical claim.

However, Plaintiff fails to allege facts showing that any of the Defendants acted with deliberate indifference to his serious medical needs. Plaintiff alleges that doctors and nurses did not listen to Plaintiff, or take him seriously when he told them about his injuries and medical problems, did not accurately document some of his medical information, treated him with indifference or negativity, failed to order timely medical tests, failed to order effective pain medication, failed to place a medical hold on Plaintiff instead of transferring him, waited too long to remove sutures, disagreed with Plaintiff's diagnoses, refused to allow Plaintiff to see the doctor, misdiagnosed his ailments, and failed to properly examine him. While these are serious allegations they do not rise to the level of deliberate indifference because Plaintiff has not shown that any of the Defendants drew the inference that there was a substantial risk of serious harm to Plaintiff's health and yet deliberately ignored the risk and acted unreasonably-- or failed to act to reduce the risk of harm. Defendant Agbasi examined Plaintiff's neck and called over defendant Armendarez to take a look. Defendant Armendarez spoke with Dr. Gines who prescribed antibiotics for what appeared to be an infected ingrown hair. Dr. Beregovskaya examined Plaintiff's neck and took x-rays, concluding that Plaintiff did not have a stab wound or a foreign body embedded under his skin. Dr. Beregovskaya decided not to re-open the wound, but she prescribed new antibiotics to clear up Plaintiff's infection. There are no factual allegations showing that any of the Defendants understood that Plaintiff was at substantial risk of serious harm to his health because of a stab wound. Under Plaintiff's allegations, the Defendants did not realize that a piece of plastic was lodged in Plaintiff's neck, and there are no facts showing that any of the Defendants purposely withheld appropriate treatment while knowing that Plaintiff was

at risk of serious harm. At most, Plaintiff states a claim for negligence, which is not actionable under § 1983. "[E]ven gross negligence is insufficient to establish a constitutional violation." Toguchi, 391 F.3d at 1060.

Therefore, Plaintiff fails to state a medical claim under the Eighth Amendment against any of the Defendants.

### B. <u>Medical Privacy</u>

To state a claim under § 1983, Plaintiff must allege that Defendants deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185; see also Marsh, 680 F.3d at 1158. The United States Supreme Court has never held that the Constitution protects an individual's right to informational privacy. See NASA v. Nelson, 562 U.S. 134, 131 S.Ct. 746, 751, 178 L.Ed.2d 667 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in Whalen[ v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)] and Nixon[ v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)]."); see also NASA, 562 U.S. at 160 (Scalia, J., concurring) ("A federal constitutional right to 'informational privacy' does not exist."). It is unsurprising, then, that the scope of a prisoner's constitutional right to the privacy of his health information is not clearly defined. See, e.g., Ismail v. Fulkerson, No. SA CV 10–00901–VBF–AJW, 2014 WL 3962488, at *14 (C.D. Cal. Aug.12, 2014) (noting that the relevant Ninth Circuit jurisprudence is "unsettled and confusing").

Even assuming that Plaintiff has a Constitutional right to protect his private information, Plaintiff fails to state a claim against defendants G. Agbasi (LVN) or Armendarez (RN) for violating that right. There are no facts showing that any of Plaintiff's private information was disclosed. A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). Here, Plaintiff shows no act by Defendants Agbasi or Armendarez that caused the disclosure of Plaintiff's private information, causing him injury.

## C. **Failure to Protect -- Eighth Amendment Claim**

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Plaintiff's claim that defendants Armendarez (RN) and C. Agbasi (LVN) failed to protect him from harm fails. Plaintiff has not shown that either of the defendants knew they were placing him at substantial risk of serious harm when they asked him how he was injured.

Therefore, Plaintiff fails to state a claim against defendants Armendarez (RN) and C. Agbasi (LVN) for violating his right to privacy or for failing to protect him from harm.

## D. **Due Process**

The Due Process Clause protects prisoners from being deprived of life, liberty, and property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

Plaintiff states in the Third Amended Complaint that he was subjected to "cruel and unusual punishment, resulting in denial of due process." 3ACP at 3 ¶ IV. However, Plaintiff

alleges no facts in the Third Amended Complaint that would cause the court to infer that his due process rights were violated. Plaintiff has not established the existence of a property or liberty interest for which the due process protection was sought. Therefore, Plaintiff fails to state a claim for the violation of his rights to due process.

### E. State Law Claims

Plaintiff alleges that Defendants have violated CDCR or prison rules and California regulations. Plaintiff is informed that violation of state regulations, rules and policies of the CDCR, or other state law, such as negligence, is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court fails to find any cognizable federal claims in the Third Amended Complaint. Therefore, Plaintiff's state law claims fail.

### F. Injunctive Relief and Mootness

Plaintiff requests as injunctive relief a court order requiring all named Defendants to change their conduct when interviewing and treating patients. 3ACP at 5-7. Plaintiff's transfer from North Kern State Prison to another correctional facility renders this claim for injunctive relief moot because Plaintiff is no longer subject to Defendants' conduct at North Kern State Prison. Where the prisoner is challenging conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). Here, Plaintiff has not demonstrated a reasonable likelihood that he will be returned to North Kern State Prison and subjected to the

practices at issue. Therefore, Plaintiff's request for injunctive relief against Defendants at North Kern State Prison is moot.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claim against any of the Defendants in the Third Amended Complaint. Therefore, the court shall recommend that this case be dismissed for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has now filed four complaints without stating any claims upon which relief may be granted under § 1983. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983;
2. This dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g); and
3. The Clerk be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Wilkerson v. Wheeler,

772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**July 29, 2019**__        __**/s/ Gary S. Austin**__
                                                                                    UNITED STATES MAGISTRATE JUDGE