UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANTE DION SCOTT, | **1:17-cv-01146-NONE-GSA-PC** |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | |
| BEREGOVSKAY, et al., | **(ECF No. 56.)** |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Tiante Dion Scott ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with Plaintiff's Third Amended Complaint filed on November 19, 2018, against Defendants Dr. Beregovskaya,[1] Dr. David Gines, LVN C. Agbasi, and RN A. Armendariz[2] ("Defendants") for providing inadequate medical care in violation of the Eighth Amendment.[3]  (ECF No. 25.)

---

[1] Sued as Beregovskay.

[2] Sued as Armendarez.

[3] Plaintiff names only Beregovskaya, Gines, Agbasi, and Armendariz as defendants in the Third Amended Complaint.  (ECF No. 25.)  On August 11, 2020, the Ninth Circuit remanded this case to the district court to proceed only with Plaintiff's medical deliberate indifference claims.  (ECF No. 39.)

On August 9, 2021, Defendants filed a motion for summary judgment.  (ECF No. 56.)  On September 15, 2021, Plaintiff filed an opposition to the motion.[4]  (ECF No. 60.)  On September 22, 2021, Defendants filed a reply to the opposition.   (ECF No. 62.)  Pursuant to Local Rule 230(*l*), this motion is now before the court.

For the reasons set forth below, the court recommends that Defendants' motion for summary judgment be granted.

## II.     SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  Id.  This requires

---

[4] Together with the motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 56 at 2-3.)

Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.   PLAINTIFF'S ALLEGATIONS -- THIRD AMENDED COMPLAINT[5]

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the Third Amended Complaint allegedly occurred when Plaintiff was incarcerated at North Kern State Prison in Delano, California.  Plaintiff names as defendants Olga Beregovskaya (MD),  David Gines (MD), C. Agbasi (LVN), and A. Armendariz (RN) (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

On February 27, 2016, Plaintiff was attacked by inmate Beloney, and one of Beloney's

---

[5] Plaintiff's Third Amended Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

associates stabbed Plaintiff in the neck.  Correctional officers (C/Os) ordered the inmates to get down on the ground, then were ordered to return to their assigned housing.  Apparently, the C/Os did not notice the stab wound which did not start to bleed until Plaintiff arrived at his cell.

On February 28, 2016, Plaintiff's neck was swollen and he could not lift his right arm. Plaintiff was again attacked by inmate Beloney.  The C/Os stopped the fight and the two inmates were placed in holding cages side-by-side to be interviewed by a Registered Nurse [not a defendant] and a Correctional Officer [not a defendant], without seeing a doctor even after Plaintiff asked to see one.

On February 29, 2016, Plaintiff again fought with inmate Beloney.  The fight was stopped and the two inmates were placed in holding cages.  Defendant C. Agbasi (LVN) interviewed the inmates. Because Plaintiff was in the presence of inmate Beloney he could not privately inform the nurse about his neck wound.  When asked how he was injured, Plaintiff told defendant Agbasi that while playing basketball someone with long fingernails punctured him.  By now the wound was swollen and white pus bubbled from the puncture site.  Plaintiff wanted to privately see a doctor for antibiotics, so he told defendant Agbasi, "I think the puncture might be infected by [a] staph infection."  3ACP at 9:19.  Defendant Agbasi took a closer look at Plaintiff's neck and called over defendant Armendariz (RN) to also look.  Defendant Armendariz left and returned telling Plaintiff she (Armendariz) had spoken with defendant Dr. Gines and told him (Gines) she thought Plaintiff's wound was an ingrown hair and needed antibiotics.  Plaintiff demanded to see the doctor and defendant Agbasi told Plaintiff to fill out a 7362 medical request form.  Defendant Agbasi completed Plaintiff's examination.  Plaintiff told defendant Agbasi that he could not raise his arm and demanded that Agbasi record on the 7219 form that his arm was injured, which Agbasi did.  Plaintiff was returned to his cell.

According to California regulations and CDCR rules, defendants Agbasi and Armendariz were required to interview Plaintiff in private, record all of his concerns, take his vital signs, assess whether he was injured, handle sensitive and confidential information with discretion, and follow other guidelines required under the regulations. Plaintiff alleges that Agbasi and Armendariz were negligent in their legal duty to preserve Plaintiff's safety by not interviewing

4

Plaintiff in a private area without interruption.  They did not accurately provide a detailed and reliable assessment to the doctor, especially since it would be later discovered that Plaintiff had a piece of shank lodged against his carotid artery.  Plaintiff was prescribed a series of medications for the infection on his neck for two months.  The infection returned because there was a foreign object still lodged in Plaintiff's neck.

Dr. Gines was also required to follow guidelines found in CDCR rules and California regulations when treating Plaintiff.  He prescribed an antibiotic for an ingrown hair without seeing Plaintiff, which Plaintiff alleges was negligent.  Dr. Gines did not ask Plaintiff if he had any medical allergies, and Plaintiff has asthma.  He should have seen Plaintiff as an emergency walk-in patient.  Dr. Gines's deficient documentation of his alleged examination and prescription were relied upon by defendant Dr. Olga Beregovskaya, causing her to disregard Plaintiff's concerns of his severely injured arm and stab wound.  Dr. Beregovskaya had a legal responsibility to accurately document Plaintiff's complaints and to provide reasonable and necessary medical care pursuant to CDCR Rules and California regulations.

On March 1, 2016, Plaintiff was attacked again by different inmates than the ones on February 27, 2016, sending Plaintiff to the emergency room with a laceration.  Dr. Beregovskaya saw Plaintiff as a patient and operated on him to close the laceration with seven stitches.  She did not attempt to treat Plaintiff's existing stab wound, even after Plaintiff told her he had been stabbed.  Plaintiff's records state that he had a mass on the right side of his neck.  Plaintiff informed Dr. Beregovskaya about his arm and she attempted to assess the injury.  She instructed Plaintiff to lift his arm, which he attempted, but it was very painful.  Dr. Beregovskaya told Plaintiff he was not raising his arm because he didn't want to.  Plaintiff became upset and told her he did not want her sympathy, was not there to flirt, and would not tell her his problems except that she was a doctor and he needed care.  She ignored Plaintiff's statement that he was in a fight four days in a row, in extreme pain, was not sleeping, and was fatigued from loss of blood and infections.  Dr. Beregovskaya again looked at Plaintiff's neck and said it did not look like a stab wound.  Plaintiff responded that it was changing colors and was infected.  She took x-rays which did not show metal in Plaintiff's neck.  He asked whether an x-ray could show glass

or plastic, and she said no.  Dr. Beregovskaya told Plaintiff his antibiotics would be changed. Plaintiff asked Dr. Beregovskaya if she would clean out his neck wound, and she responded that she was not going to reopen the wound.  Plaintiff's arm was later found to have a torn rotator cuff and bicep tear.   The piece of plastic shank remained impaled in Plaintiff's jugular vein, lateral to the carotid artery.

Plaintiff requests monetary damages, injunctive relief, and declaratory relief.

## IV.     PLAINTIFF'S MEDICAL CLAIM – LEGAL STANDARD

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer v. Brennan, 511 U.S.

825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## V.   DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS[6]

Defendants submitted this statement of undisputed material facts in support of their motion for summary judgment.  (ECF No. 56-2.)

1.   Plaintiff Tiante Dion Scott ("Plaintiff") has been in custody ever since his arrest for a violation of Penal Code section 211 for robbery and awaiting trial. (Hsu Decl. at ¶ 2 & Ex. A ("Plaintiff Depo.") at 24:23-25:2.)

2.   Plaintiff was convicted of a violation of Penal Code section 211 for robbery in December 2006 and was sentenced to 36 years. (Plaintiff Depo. at 23:24-24:13.)

3.   Plaintiff is currently incarcerated and serving his sentence at the California Department of Corrections and Rehabilitation ("CDCR") and is housed at the

---

[6] Plaintiff failed to properly address Defendants' statement of undisputed facts, as required by Local Rule 260(b).  Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion.  Id; Fed. R. Civ. P. 56(e)(2).  However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

California State Prison in Sacramento located at the city of Represa. (Plaintiff Depo. at 26:18-22.)

4.    Defendant Dr. Olga Beregovskaya is a Medical Doctor, licensed by the State of California as a Physician and Surgeon since December 14, 2005. (Declaration of Dr. Beregovskaya ("Def. Beregovskaya Decl.") at ¶1.) She is, and was, at all times relevant to the allegations in this case, employed by CDCR as a Physician & Surgeon at the North Kern State Prison ("NKSP") in Delano, California. (Def. Beregovskaya Decl. at ¶ 1.)

5.    As a Physician and Surgeon for the CDCR, Dr. Beregovskaya's duties include providing medical care to inmate-patients at the NKSP Correctional Treatment Center ("CTC"). (Def. Beregovskaya Decl. at ¶¶ 1, 3, 4.)

6.    Defendant Dr. David Gines is a Medical Doctor, licensed by the State of California as a Physician and Surgeon since September 28, 2005. (Declaration of Dr. Gines ("Def. Gines Decl.") at ¶1.) He is, and was, at all times relevant to the allegations in this case, employed by CDCR as a Physician & Surgeon at the NKSP in Delano, California. (Def. Gines Decl. at ¶ 1.)

7.    As a Physician and Surgeon for the CDCR, Dr. Gines' duties include providing medical care to inmate-patients at the NKSP Correctional Treatment Center ("CTC"). (Def. Gines Decl. at ¶¶ 1, 3, 4.)

8.    Defendant Chika Agbasi is a nurse, licensed by the State of California as a Licensed Vocational Nurse ("LVN") since June 22, 2007. (Declaration of Agbasi ("Def. Agbasi Decl.") at ¶1.) He is, and was, at all times relevant to the allegations in this case, employed by CDCR as a LVN at the NKSP in Delano, California. (Def. Agbasi Decl. at ¶ 1.)

9.    As a LVN for the CDCR, Defendant Agbasi's duties include providing medical assessments and treatment to inmate-patients at the NKSP CTC. (Def. Agbasi Decl. at ¶ 1.)

///

10. Defendant Guadalupe Armendariz is a nurse, licensed by the State of California as a Registered Nurse ("Registered Nurse") since January 25, 2006. (Declaration of Armendariz ("Def. Armendariz Decl.") at ¶ 1.) She is, and was, at all times relevant to the allegations in this case, employed by CDCR as a RN at the NKSP in Delano, California. (Def. Armendariz Decl. at ¶ 1.)

11. As a RN for the CDCR, Defendant Armendariz's duties include providing medical assessments and treatment to inmate-patients at the KVSP CTC. (Def. Armendariz Decl. at ¶¶ 1, 3, 4.)

12. NKSP is a California Department of Corrections and Rehabilitation correctional facility located at Delano, California. (Def. Beregovskaya Decl. at ¶ 1.)

13. Plaintiff was housed at the KVSP from about 2013 to 2016. (Plaintiff Depo. at 27:6- 10.)

14. Thereafter, Plaintiff was transferred to Pelican Bay State Prison located in Crescent City on July 26, 2016. (Plaintiff Depo. at 104:5-16.)

15. On January 22, 2019, Plaintiff was transferred to Sacramento State Prison in Represa where he is currently incarcerated. (Plaintiff Depo. 28:20-24.)

16. At all relevant times, Plaintiff was incarcerated and held at the NKSP during the events giving rise to this action against Defendant (Plaintiff Depo. at 23:26-27:2.)

17. On or about February 27, 2016, at approximately 6:00 p.m., Plaintiff was physically attacked by his former cellmate named Edmond Beloney in the yard. (Plaintiff Depo. at 36:8-21, 37:13-16.) He and his former cellmate got into a fight about a write-up that they both had received from having contraband in their cell, specifically pruno (prison-manufactured wine) and marijuana. (Plaintiff Depo. at 37:17-23.) Plaintiff's former cellmate walked behind Plaintiff and then struck Plaintiff with his fists and punched Plaintiff in the face. (Plaintiff Depo. at 39:3-14.) Plaintiff was also stabbed in on the right side of his neck by an unknown third party. (Plaintiff Depo. at 39:15-25, 40:1-7.) Plaintiff believes that this fight lasted about ten (10) minutes. (Plaintiff Depo. at 42:11-25.) Then, five (5) or six (6)

correctional officers intervened and stopped the altercation. (Plaintiff Depo. at 43:1-10.) Plaintiff did not request medical attention after this incident. (Plaintiff Depo. at 44:25 - 45:7.)

18.     On or about February 28, 2016, between approximately 3:00 to 4:00 p.m., Plaintiff's former cellmate confronted Plaintiff after Plaintiff's shift at the Visiting Room (Plaintiff Depo. at 45:8 - 46:10), and he fought Plaintiff a second time (Plaintiff Depo. at 48:24 - 49:12). Plaintiff and his former cellmate were swinging at one another, and then they fell to the ground wrestling. (Plaintiff Depo. at 49:18-25.) After about ten (10) minutes of mutual combat, Plaintiff ran away from his former cellmate. (Plaintiff Depo. at 50:7-18.) His former cellmate caught up to him, and then they fought another five (5) minutes or so before the correctional officers threw a canister of a pepper spray-like substance at them to break up the fight. (Plaintiff Depo. at 58:25 - 59:22.) Then, they stopped fighting. (Plaintiff Depo. at 59:23 - 60:14.) Plaintiff was first escorted to a secured location to be seen and treated by a nurse, last name Oyenini. (Plaintiff Depo. at 64:16 - 65:15.) He did not receive any other medical care on this day from another medical professional besides nurse Oyenini. (Plaintiff Depo. at 69:6-10.) Plaintiff was then removed from his cell in the same building as his former cellmate to a cell located in a different building. (Plaintiff Depo. at 61:12-18.)

19.     Plaintiff first noticed that he had pains in his right arm and could not lift objects with his right arm after 8:30 a.m. on February 28, 2016. (Plaintiff Depo. at 54:12 - 55:14.) He did not inform anyone that he could not do his job due to the pains in his right arm. (Plaintiff Depo. at 56:2-5.) He was concerned that if he had complained about his arm pains that it would lead to the correctional officers to question his bandaged neck injury, which in turn, would lead to him informing on another inmate and risk his life for telling on another inmate. (Plaintiff Depo. at 56:6 - 57:8.)

///

20.   On or about February 29, 2016, at around 12:00 to 1:00 p.m., Plaintiff was involved in another altercation with his former cellmate. (Plaintiff Depo. at 69:19 - 70:8, 71:17-25.) This fight spanned about ten (10) minutes; then was broken up by correctional officers, and they were escorted to a secured location to be interviewed by nurses. (Plaintiff Depo. at 72:1-14.)

21.   Plaintiff was first interviewed by Defendant Agbasi and next by Defendant Armendariz. (Plaintiff Depo. at 72:15-21.) Plaintiff told Defendants Agbasi and Armendariz that he was in pain and that his arm hurt. (Plaintiff Depo. at 72:22-25, 76:24 - 77:3.) Defendant Agbasi notated that Plaintiff had a scratch on the left side of his face but did not provide any medical treatment to Plaintiff. (Plaintiff Depo. at 73:8-18.) Plaintiff talked to Defendant Agbasi for about twenty (20) minutes and told Agbasi that he needed to see a doctor because he felt he his neck had a staph infection from a scratch incurred from a person with long nails who punctured the skin on his neck while playing basketball. (Plaintiff Depo. at 74:4-24.) Plaintiff explained that he lied about the cause of his neck injury to Agbasi and that injury actually stemmed from the stabbing on February 27, 2016 because he did not want to be branded as a tattletale and risk getting killed in prison by his enemy. (Plaintiff Depo. at 75:10 - 76:22.) Plaintiff told Defendants Agbasi and Armendariz that he wanted to see a doctor, and Armendariz went to speak to someone and came back, then told him he would receive antibiotics for his neck infection but would not be able to see a doctor. (Plaintiff Depo. at 78:4-21.) Subsequently, upon review of his medical records, Plaintiff learned that Defendant Armendariz told Defendant Dr. Gines that Plaintiff had an in-grown hair in his neck and requested a prescription for antibiotics. (Plaintiff Depo. at 79:22 - 80:19.) Plaintiff was upset after reviewing his medical records because he believed that Dr. Gines had refused to see or treat him on February 29, 2016. (Plaintiff Depo. at 89:10-25.)

///

22. Defendants Agbasi and Armendariz had no reason to believe that Plaintiff was not telling them the truth when he explained that his neck injury was caused by a scratch from another inmate player's fingernail. (Def. Armendariz Decl. at ¶ 6.) They never encountered Plaintiff again or assessed him for any potential medical needs after February 29, 2016. (Def. Armendariz Decl. at ¶ 8.)

23. Defendant Dr. Gines had no in-person interaction or patient assessment of Plaintiff on or about February 29, 2016. (Def. Gines Decl. at ¶¶ 3, 5.) Other than the information he received from the CDCR nursing staff which he had no reason to doubt or disbelieve, Dr. Gines fulfilled his duties as a Physician and Surgeon for the NKSP on that date, and provided adequate and necessary medical care to Plaintiff at that time. (Def. Gines Decl. at ¶¶ 3-6.) Specially, Dr. Gines prescribed Plaintiff with Doxycycline Hyclate 100 mg. (Plaintiff Depo. at 127:7-12; Plaintiff's Third Amended Complaint ECF No. 25, p. 9; Def. Gines Decl. at ¶ 5.) Dr. Gines also explained to the nursing staff to instruct and counsel Plaintiff about wound care and how to take the antibiotic medication that he had prescribed to Plaintiff. (Def. Gines Decl. at ¶ 6.) He further relayed to the nursing staff to advise Plaintiff to alert the clinical or custodial staff if Plaintiff were to experience worsening pain or other complications. (Id.)

24. On or about March 1, 2016, at approximately 12:00 p.m., Plaintiff was physically attacked by two (2) inmates named Brooks and Wright. (Plaintiff Depo. at 81:7 - 82:4.) This altercation lasted about thirteen (13) to fourteen (14) minutes, and the two (2) inmates beat and injured Plaintiff with their fists. (Plaintiff Depo. at 82:9-25.) Subsequently, after the correctional officers broke up the fight, Plaintiff was escorted to a temporary treatment room to receive medical care for the laceration to his left cheek. (Plaintiff Depo. at 83:1 - 84:10.) Defendant Dr. Beregovskaya was the physician who treated Plaintiff after the altercation on this date. (Plaintiff Depo. at 84:16 – 85:10; Def. Beregovskaya Decl. at ¶ 3.) Plaintiff argued with Dr. Beregovskaya during his treatment because he was upset that Dr. Beregovskaya

purportedly disbelieved that he could not raise his right arm or that he was stabbed in the neck. (Plaintiff Depo. at 86:15 - 87:23.) Dr. Beregovskaya closed up Plaintiff's facial laceration with seven (7) stitches on the left cheek. (Plaintiff Depo. at 88:10-13; Def Beregovskaya Decl. at ¶ 10.)

25. The only occasion that Plaintiff received medical treatment from Dr. Beregovskaya was on March 1, 2016, and she never treated him again for any other ailment or condition. (Plaintiff Depo. at 88:17-24.)

26. During Dr. Beregovskaya's examination of Plaintiff, he provided inconsistent information with regard to his neck injury from what was recorded in his medical chart. (Def. Beregovskaya Decl. at ¶ 9.) According to his chart, Plaintiff had previously stated to other medical staff, namely nurse Agbasi and Armendariz that his neck was scratched by another inmate's fingernail while playing basketball and that it could be infected. There was no mention of any stabbing of the neck by a foreign object. (Id.)

27. Plaintiff presented with visible injuries to his face, namely a half-inch laceration on his left cheek. (Plaintiff Depo at 88:10-13; Def. Beregovskaya Decl. at ¶ 9.) Dr. Beregovskaya applied local anesthesia and then closed Plaintiff's facial wound with seven (7) sutures or stitches. (Def. Beregovskaya Decl. at ¶ 10.)

28. Plaintiff agrees that he provided inconsistent information to Defendants Agbasi, Armendariz, and Dr. Beregovskaya with regard to the cause of his purported neck injury. (Plaintiff Depo. at 103:22-104:1.)

29. Plaintiff also agrees that he never received face-to-face medical treatment or assessment from Dr. Gines on February 29, 2016. (Plaintiff Depo. at 89:10-25.)

30. During her examination of Plaintiff on March 1, 2016, Dr. Beregovskaya did not observe symptoms of a penetrating wound on Plaintiff's neck because his neck injury had a scab over the wound site and was healing. (Def. Beregovskaya Decl. at ¶ 9.) In her training, background, and experience, the traditional protocol was not to open or disturb the healing wound and allow it to heal naturally. (Id.) Dr.

Beregovskaya also counseled Plaintiff on signs of infection and switched his antibiotic medication to Clindamycin to treat his neck wound. (Def. Beregovskaya Decl. at ¶ 11.) She also told Plaintiff to inform the clinical or custodial staff if he experienced worsening pain or other complications. (Id.)

31. Plaintiff filed a medical grievance or appeal with North Kern State Prison on or about March 3, 2016. (Plaintiff Depo. at 96:7-16.)

32. On or about March 8, 2016, Plaintiff was seen, assessed, and treated by Dr. Flores who performed an independent body examination of his arm and his neck, and ordered an MRI for his neck but the MRI was denied. (Plaintiff Depo. at 99:3 - 100:15.)

33. About a year later around March 2017, when Plaintiff was incarcerated at Pelican Bay State Prison, he received a CT scan for his neck. (Plaintiff Depo. at 101:7-13.) On or about March 7, 2017 at St. Joseph's Heritage Healthcare, surgery was performed on Plaintiff's neck and a pinhead was removed. (Plaintiff Depo. at 101:14-25.)

34. At no time during Dr. Beregovskaya's treatment of Plaintiff's injuries did she seek to intentionally harm Plaintiff. (Plaintiff Depo. at 114:2-12; Def. Beregovskaya Decl. at ¶ 12.)

35. At no time during Defendant Agbasi's treatment and assessment of Plaintiff did he seek to intentionally harm Plaintiff. (Plaintiff Depo. at 113:9-15; Def. Agbasi Decl. at ¶¶ 6-7.)

36. At no time during Defendant Armendariz's treatment and assessment of Plaintiff did she seek to intentionally harm Plaintiff. (Plaintiff Depo. at 113:16-25; Def. Armendariz Decl. at ¶ 9.)

37. At no time during Dr. Gines' consultation and treatment of Plaintiff's injuries did he seek to intentionally harm Plaintiff. (Plaintiff Depo. at 111:2-12, 112:6-11, 112:21 - 113:1-6; Def. Gines Decl. at ¶7.)

///

38. Dr. Beregovskaya provided the proper medical care needed under the circumstances and with the knowledge that she had at the time when she provided emergency medical treatment to Plaintiff on March 1, 2016. (Def. Beregovskaya Decl. at ¶¶ 8-11.)

39. RN Armendariz provided the proper patient assessment under the circumstances and with the knowledge that she had at the time when she assessed Plaintiff on February 29, 2016. (Def. Armendariz Decl. at ¶ 9.)

40. Dr. Gines provided the proper medical care needed under the circumstances and with the knowledge that he had at the time when he provided medical treatment to Plaintiff on February 29, 2016. (Def. Gines Decl. at ¶¶ 5-7.)

41. Plaintiff has no evidence to support his claims against Dr. Beregovskaya other than his personal belief that she was indifferent to his medical needs because her report of the March 1, 2016 examination stated that she disbelieved Plaintiff had suffered an arm injury, and that this statement caused other subsequent medical professionals to disbelieve Plaintiff's complaints. (Plaintiff Depo. at 105:22 - 107:2.)

42. There was nothing in Plaintiff's medical records demonstrating deliberate indifference on the part of Defendants as claimed in the Complaint. In fact, Plaintiff received appropriate medical treatment from all Defendants that was at or above the standard of care under the circumstances as presented. (Def. Beregovskaya Decl. at ¶¶ 8-12; Def. Gines Decl at ¶¶ 5-7; and Def. Armendariz Decl. at ¶¶ 5-9.)

## VI.  DEFENDANTS' POSITION

Defendants argue that Plaintiff's medical records do not support his claims that Defendants acted with deliberate indifference.  They claim that at all relevant times Defendants provided the proper care needed under the circumstances and with the knowledge that they had at the time when they provided emergency medical treatment to Plaintiff.

///

Defendants submitted as evidence the declarations of Cheryl W. Hsu (Defense Counsel) (ECF No. 56-3), Defendant Dr. Olga Beregovskaya (ECF No. 56-4), Guadalupe Armendariz (RN) (ECF No. 56-5), Defendant Chika Agbasi (LVN) (ECF No. 56-6), and Defendant Dr. David Gines (ECF No. 7), and Plaintiff's deposition testimony of March 23, 2021 (ECF No. 56-3, Exh. A).

Defendants' evidence shows as follows:

**First Incident**

Plaintiff testified that on February 27, 2016, at about 6:00 p.m., he was physically attacked in the yard by his former cellmate, Edmond Beloney. (Plaintiff Depo. at 36:8-21, 37:13-16.) Beloney punched Plaintiff in the face and then an unknown third party stabbed Plaintiff in the right side of the neck. (Plaintiff Depo. at 39:15-25, 40:1-7.)

Plaintiff first noticed that he had pains in his right arm and could not lift objects with his right arm after 8:30 a.m. on February 28, 2016. (Plaintiff Depo. at 54:12 - 55:14.) He did not inform anyone that he could not do his job due to the pains in his right arm. (Plaintiff Depo. at 56:2-5.) He was concerned that if he had complained about his arm pains that it would lead to the correctional officers to question his bandaged neck injury, which in turn, would lead to him informing on another inmate and risk his life for telling on another inmate. (Plaintiff Depo. at 56:6 - 57:8.)

**Second Incident**

Plaintiff testified that on or about February 28, 2016, between about 3:00 to 4:00 p.m., Beloney again confronted him a second time after Plaintiff's shift at the Visiting Room. (Plaintiff Depo. at 45:8 - 46:10). Correctional officers threw a canister of pepper spray-like substance at them and stopped the fight. (Plaintiff Depo. at 58:25 - 59:22.) Plaintiff was escorted to a secured location to be seen and treated by a nurse named Oyenini. (Plaintiff Depo. at 64:16 - 65:15.) Plaintiff did not receive medical treatment or care from any other medical professional on that day. (Plaintiff Depo. at 69:6-10.)

///

///

### Third Incident

On or about February 29, 2016, between 12:00 to 1:00 p.m., Plaintiff was involved in a third altercation with his former cellmate Beloney.  (Plaintiff Depo. at 69:19 - 70:8, 71:17-25.) Correctional officers stopped the fight and escorted them to a secured location to be treated by the nursing staff. (Plaintiff Depo. at 72:10-14.) Plaintiff was interviewed by Defendant Agbasi and then Defendant Armendariz.  (Plaintiff Depo. at 72:15-21.) Plaintiff told Defendants Agbasi and Armendariz that he was in pain and that his arm hurt. (Plaintiff Depo. at 72:22-25, 76:24 - 77:3.)  Defendant Agbasi notated that Plaintiff had a scratch on the left side of his face but did not provide any medical treatment to Plaintiff. (Plaintiff Depo. at 73:8-18.)

Plaintiff told Defendant Agbasi that he needed to see a doctor because he was concerned that he had a staph infection from a scratch he had incurred from a person with long fingernails who punctured his neck skin while playing basketball.  (Plaintiff Depo. at 74:4-24.)  Plaintiff said that he lied to Defendants Agbasi and Armendariz about the actual cause of his neck wound because he did not want to be branded as a tattletale and risk getting killed in prison by his enemy. (Plaintiff Depo. at 75:10 - 76:22.)

Subsequently, Nurse Armendariz went to speak to Defendant Dr. Gines about Plaintiff's chief complaint regarding his neck wound.  (Plaintiff Depo. at 78:4-21.) Dr. Gines received information from Nurse Armendariz and did not have a face-to-face patient assessment of Plaintiff. (Def. Gines Decl. at ¶¶ 3, 5.)   Dr. Gines prescribed Doxycycline Hyclate 100 mg to Plaintiff for his neck injury. (Id.) (Plaintiff Depo. at 78:4-21.)

Defendant Armendariz then told Plaintiff he would receive antibiotics for his neck wound but would not be able to see a doctor that day. (Id.) (Def. Gines Decl. at ¶¶ 3, 5.) Plaintiff did not receive any further medical assessment or treatment from Defendants Agbasi or Armendariz after February 29, 2016. (Def. Armendariz Decl. at ¶ 8.) Defendant Dr. Gines had no in-person interaction or patient assessment of Plaintiff on or about February 29, 2016. (Def. Gines Decl. at ¶¶ 3, 5.)

On or about March 1, 2016, at around 12:00 p.m., two (2) other inmates named Brooks and Wright attacked Plaintiff.  (Plaintiff Depo. at 81:7 - 82:4.) Correctional officers broke up the

fight, and Plaintiff was escorted to a temporary treatment room to receive medical treatment for his injuries from the fight. (Plaintiff Depo. at 83:1 - 84:10.)

Defendant Dr. Beregovskaya was the physician who rendered emergency medical treatment to Plaintiff after the altercation on this date.  (Plaintiff Depo. at 84:16 – 85:10, Def. Beregovskaya Decl. at ¶ 3.) Defendant Dr. Olga Beregovskaya is a Medical Doctor, licensed by the State of California as a Physician and Surgeon since December 14, 2005.  (Def. Beregovskaya Decl. at ¶1.) Dr. Beregovskaya is and was, at all times relevant to the allegations in this case, employed by CDCR as a Physician & Surgeon at North Kern State Prison ("NKSP") in Coalinga, California. (Def. Beregovskaya Decl. at ¶ 1.) As a Physician and Surgeon for the CDCR, Dr. Beregovskaya's duties include providing medical care to inmate-patients at the NKSP Correctional Treatment Center ("CTC"). (Def. Beregovskaya Decl. at ¶¶ 1, 3, 4.)

During Dr. Beregovskaya's examination, Plaintiff presented with visible injuries to his face, a half-inch laceration on his left cheek.  (Plaintiff Depo. at 88:10-13; Def. Beregovskaya Decl. at ¶ 9.) Dr. Beregovskaya applied local anesthesia and then closed Plaintiff's facial wound with seven (7) sutures or stitches.  (Def. Beregovskaya Decl. at ¶ 10.) Plaintiff also told Dr. Beregovskaya inconsistent information regarding his neck injury different from what was recorded in his medical chart.  (Plaintiff Depo. at 103:22-104:1.) (Def. Beregovskaya Decl. at ¶ 9.) According to his chart, Plaintiff had previously stated to other CDCR medical staff, namely nurses Agbasi and Armendariz, that his neck was scratched by another inmate's fingernail while playing basketball and that it could be infected. (Id.) Plaintiff never mentioned that someone had stabbed his neck with a foreign object. (Id.) Plaintiff agreed that he provided inconsistent information to Defendants Agbasi, Armendariz, and Dr. Beregovskaya with regard to the cause of his purported neck injury.  (Plaintiff Depo. at 89:10-25.) During her examination of Plaintiff, Dr. Beregovskaya did not observe symptoms of a penetrating wound on Plaintiff's neck because his neck injury had a scab over the wound site and was healing.  (Def. Beregovskaya Decl. at ¶ 9.) In her training, background, and experience, the proper medical protocol was not to open or disturb the healing wound and allow it to continue the healing process. (Id.) Dr. Beregovskaya also counseled Plaintiff on signs of infection and switched his antibiotic medication to

Clindamycin to treat his neck wound. (Def. Beregovskaya Decl. at ¶ 11.)  Plaintiff argued with Dr. Beregovskaya during his treatment because he was upset that Dr. Beregovskaya purportedly disbelieved that he could not raise his right arm or that he was stabbed in the neck.  (Plaintiff Depo. at 86:15 - 87:23.)  Thereafter, Plaintiff never received medical treatment from Dr. Beregovskaya since March 1, 2016.  (Plaintiff Depo. at 88:17-24.)

**Later Treatment**

On or about March 3, 2016, Plaintiff filed a medical grievance or appeal with the NKSP and complained about the medical treatment he had received from Defendants and other medical professionals. (Plaintiff Depo. at 96:7-16.) On or about March 8, 2016, Plaintiff was seen, assessed and treated by Dr. Flores who performed an independent medical examination of his arm and his neck, and ordered an MRI for his neck, but that request was denied. (Plaintiff Depo. at 99:3 - 100:15.) About a year later around March 2017, when Plaintiff was incarcerated at the Pelican Bay Station Prison, he received a CT scan for his neck. (Plaintiff Depo. at 101:7-13.) Subsequently, on or about March 7, 2017 at St. Joseph's Heritage Healthcare, surgery was performed on Plaintiff's neck and a pinhead was removed. (Plaintiff Depo. at 101:14-25.)

## VII.   DEFENDANTS HAVE MET THEIR BURDEN

Based on Defendants' arguments and evidence, the court finds that Defendants have met their burden, therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## VIII.   PLAINTIFF'S OPPOSITION

Plaintiff claims that he suffered pain because Defendants failed to properly diagnose a stab wound, torn rotator cuff, and bicep tear.  He claims that Defendant Agbasi negligently failed to interview Plaintiff in a private area where he would feel safe to tell the truth about his stab wound, and that Defendants Agbasi and Armendariz misdiagnosed his stab wound as an ingrown hair and did not address his sore shoulder.  He argues that Dr. Gines should have met with him as an emergency walk-in patient and should have asked him if he had allergies to medication before prescribing antibiotics.  He also argues that Defendant Beregovskaya should have done more than give him x-rays – the type of x-rays that do not show plastic lodged under the skin --

and prescribe new antibiotics.  Plaintiff believes that Defendant Beregovskaya should have taken P's shoulder pain seriously.  Plaintiff claims that Defendants knew of his medical issues and deliberately denied treatment of his serious medical needs.

Plaintiff's Third Amended Complaint and his opposition to the motion for summary judgment are both verified and Plaintiff's allegations therein constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  Plaintiff has also submitted his medical records as evidence.

In his opposition/declaration, Plaintiff alleges:

Defendants Armendariz and Abasi breached their duty to follow California regulations and the Director's Operational Manual (Plaintiff Decl., ECF No. 60 at 18:4-10, 22:15-23), failed to accurately document Plaintiff's expressed complaints (Id. at 18:10-15, 22:23-28), failed to observe Plaintiff's condition (Id. at 17:27-18:2), failed to take Plaintiff's vital signs (Id. at 20:19-20, 23:23-24), failed to alleviate Plaintiff's pain (Id. at 21:7-11, 23:26-28), and failed to notify the doctor of Plaintiff's extreme pain, infected wound, and emotional distress (Id. at 19:14-16, 24:16-18).

Defendant Dr. Gines failed to comply with California regulations allowing Plaintiff to access a doctor 24 hours per day (Id. at 25:1-7), did not meet with Plaintiff as an emergency walk-in patient and examine his injuries (Id. at 25:10-14, 27:4-6), and did not check whether Plaintiff had allergies to medication before prescribing antibiotics (Id. at 26:18-20).

Defendant Dr. Beregovskaya failed to follow the medical health record policy found in the Director's Operational Manual.  (Id. at 8:11-15.)  Plaintiff told her that he had pain to his head, neck, face, and arm, but she did not prescribe pain medication for Plaintiff's arm injury, infection, or recovery from surgery.  (Id. at 10:25-2, 13:2-4.)  She failed to recognize a patient in distress.  (Id. at 9:7-8, 26-28.)  She relied on the C/O's report that no sharp objects were found at the scene, even though Plaintiff told her he had been stabbed three days ago.  (Id. at 9:17-22, 10:9-11.)  She also relied on the nurse's report that said Plaintiff's wound was an infection from a scratch or an ingrown hair.  (Id. at 10:17-20, 26-11:1.)  She did not believe that Plaintiff had been stabbed in the neck.  (Id. at 14:17-19.)  She ordered the wrong x-rays, which did not show

if Plaintiff had plastic or glass lodged under his skin, even after Plaintiff told her he could have been stabbed with plastic or glass.  (<u>Id.</u> at 14:2-6.)  She did not believe Plaintiff when he told her he could not raise his arm because of pain, and she told Plaintiff he was not raising his arm because he did not want to.  (<u>Id.</u> at 9:4-10, 11:27-12:2.)  She prevented Plaintiff from seeing other medical personnel by denying him an MRI or CT-Scan.  (<u>Id.</u> at 14:12-17.)  She forgot to set a date for Plaintiff's sutures to be removed, and she did not schedule follow-up visits.  (<u>Id.</u> at 13:10-13.)

## IX.   DISCUSSION

Defendants argue that Plaintiff's medical records do not support his claims that Defendants acted with deliberate indifference.  They claim that at all relevant times they provided the proper care needed under the circumstances and with the knowledge that they had at the time when they provided emergency medical treatment to Plaintiff.

Plaintiff argues that Defendants' failed to comply with CDCR rules and regulations, failed to diagnose and treat his stab wound and shoulder injury, and failed to provide him with pain medication.

### <u>Eighth Amendment Medical Claim</u>

#### 1.   <u>Serious Medical Need</u>

There is no dispute in this case that Plaintiff suffered from a "serious medical need."  Defendants do not contest that Plaintiff suffered pain from a neck wound and shoulder injury.

#### 2.   <u>Deliberate Indifference</u>

However, Plaintiff has not met his burden to present evidence showing that any of the four Defendants -- Dr. Beregovskaya, Dr. David Gines, LVN C. Agbasi, or RN A. Armendariz -- were deliberately indifferent in response to Plaintiff's medical need.

Plaintiff alleges that Defendants failed to comply with CDCR rules and regulations when providing him with medical care.  However, under the Eighth Amendment, Defendants' violation of state laws, including negligence, is not the deciding factor in whether they were deliberately indifferent to Plaintiff's medical needs.  While violation of state laws is considered by the court, the analysis of a medical claim under the Eighth Amendment rests on whether Defendants knew

about Plaintiff's serious medical needs, were consciously aware that Plaintiff faced a substantial risk of serious harm to his health, and yet ignored the risk or otherwise acted unreasonably, causing Plaintiff harm or injury.

### A.   Defendants Agbasi and Armendariz

The court finds no deliberate indifference exhibited by Defendants Agbasi or Armendariz in their treatment of Plaintiff.  Plaintiff saw Defendants Agbasi and Armendariz on February 29, 2016, after Plaintiff's third altercation with his former cellmate Beloney, two days after Plaintiff's first altercation on February 27, 2016 during which he was stabbed.  Defendants misdiagnosed the stab wound, but facts show that they were provided with incomplete information.  They examined Plaintiff and thought the wound looked like an infected ingrown hair.  Plaintiff did not correct the misdiagnosis and instead lied and told them he thought the wound was caused by another inmate's fingernail puncturing his skin while playing basketball. There was no reason for Defendants to think Plaintiff had a stab wound.  There is no evidence that with the information they had, Defendants acted with deliberate indifference by simply passing the information along to the doctor on call, Dr. Gines.  Plaintiff claims the Defendants should have addressed his sore shoulder, but there are no facts showing that Defendants thought Plaintiff's shoulder pain placed him at excessive risk of harm, or that he was suffering significant pain.  Defendants' failure to provide Plaintiff with pain medication for his stab wound, when they thought his wound was an ingrown hair, does not show deliberate indifference by Defendants, and there is no evidence that as nurses Defendants were authorized to offer or prescribe medication.

### B.   Defendant Dr. Gines

The court finds no factual allegations showing that Defendant Gines acted with deliberate indifference when treating Plaintiff.  Like Defendants Armendariz and Agbasi, Dr. Gines was given misleading information about the seriousness of Plaintiff's wound.  Plaintiff did not tell the nurses that he had a stab wound and the nurses could see that Plaintiff's wound was infected, which they indicated to the doctor.  With that information in hand, Dr. Gines' failure to meet with Plaintiff in person does not show deliberate indifference.  Like the nurses, there is no

evidence that Dr. Gines had reason to suspect an injury worse than an infected ingrown hair, thus he treated the infection with a prescription for antibiotics.    Plaintiff's opinion that Dr. Gines should have questioned him about possible allergies to medication is only a difference of opinion with his medical caregiver, which does not rise to the level of an Eighth Amendment violation.

### 3.    **Defendant Dr. Beregovskaya**

The court also finds no conduct by Defendant Dr. Beregovskaya rising to the level of deliberate indifference.  Plaintiff met with Dr. Beregovskaya on March 1, 2016, after Plaintiff was involved in an altercation on that date with other inmates who lacerated Plaintiff's face. Plaintiff alleges that the doctor failed to recognize a patient in distress; relied on the C/O's report that no sharp objects were found at the scene, even though Plaintiff told her he had been stabbed three days ago; relied on the nurse's report that said Plaintiff's wound was an infection from a scratch or an ingrown hair; did not believe that Plaintiff had been stabbed in the neck; ordered the wrong x-rays, which did not show if Plaintiff had plastic or glass lodged under his skin, even after Plaintiff told her he could have been stabbed with plastic or glass; did not believe Plaintiff when he told her he could not raise his arm because of pain, and she told Plaintiff he was not raising his arm because he did not want to; prevented Plaintiff from seeing other medical personnel by denying him an MRI or CT-Scan; did not schedule follow-up visits; and forgot to set a date for Plaintiff's sutures to be removed.    None of these allegations, without more, show that Dr. Beregovskaya acted against Plaintiff with deliberate difference.  There are no facts or inferences supporting Plaintiff's claim that Dr. Beregovskaya, knowing that Plaintiff faced an excessive risk of serious harm, ignored the risk and instead acted unreasonably, causing Plaintiff harm.

Plaintiff also alleges that Defendant Beregovskaya did not prescribe pain medication for Plaintiff's arm injury, infection, or recovery from surgery.   The court finds no deliberate indifference in her failure to prescribe pain medication.  On March 1, 2016, after Plaintiff's face had been lacerated by other inmates during an altercation, Plaintiff met with medical staff and was given Tylenol #3 and Clindamysen (antibiotic).  (Medical record, ECF No. 60 at 30.)  Later that same day, Plaintiff met with Dr. Beregovskaya, who surgically closed the laceration, using

local anesthesia.  (Medical record, ECF No 60 at 31.)  Dr. Berekovskaya indicated on Plaintiff's medical report that she did not think Plaintiff had been stabbed in the neck and instead thought he had a possible infected cyst on his neck.  (Id. at 31.)  This was the only time Plaintiff met with Dr. Berekovskaya.  She discussed with him his compliance to medication and treatment and scheduled him to see his PCP (Primary Care Doctor) the next day.  (Id.)  She also found that Plaintiff was "not in acute distress."  (Id.)  There is no evidence that Dr. Berekovskaya found Plaintiff in serious pain or that she refused Plaintiff pain medication during that visit. Considering that Plaintiff had been provided with Tylenol #3 that morning, the court finds no showing of deliberate indifference by Dr. Beregovskaya for her failure to provide Plaintiff with more pain medication that same day.

### C.   <u>Causation</u>

Plaintiff cannot establish that anything Defendants did or failed to do caused Plaintiff harm.  Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case.  <u>See</u> Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Plaintiff has presented no evidence that any conduct by the Defendants in response to Plaintiff's medical need fell below the medical standard of care so significantly that it could constitute deliberate indifference under the Eighth Amendment, or that any of the Defendants acted unreasonably in response to the knowledge that Plaintiff faced a substantial risk of serious harm, causing Plaintiff harm.  Rather, Plaintiff's causation arguments rely entirely on his non-medical opinion.  Plaintiff's opinion testimony is not admissible under Rule of Evidence 701 because he is a layman and not a medical expert:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Accordingly, based on the foregoing, the court should grant Defendants' motion for summary judgment on Plaintiff's § 1983 claim of deliberate indifference in violation of the Eighth Amendment.

## X.    CONCLUSION AND RECOMMENDATIONS

The court finds and shall recommend that based on the undisputed facts, Defendants' motion for summary judgment, filed on August 9, 2021, should be granted. In light of this recommendation, the court declines to consider Defendants' qualified immunity argument.

Therefore, based on the foregoing, it is HEREBY RECOMMENDED that:

1. The motion for summary judgment filed by Defendants Dr. Beregovskaya, Dr. David Gines, LVN C. Agbasi, and RN A. Armendariz on August 9, 2021, be GRANTED as to Plaintiff's § 1983 claims against them under the Eighth Amendment;

2. Summary judgment be granted to Defendants Dr. Beregovskaya, Dr. David Gines, LVN C. Agbasi, and RN A. Armendariz;

3. The Clerk of Court be directed to enter judgment in favor of Defendants Dr. Beregovskaya, Dr. David Gines, LVN C. Agbasi, and RN A. Armendariz and close this case.

IT IS SO ORDERED.

Dated:    **November 15, 2021**                    **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE