**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TIANTE DION SCOTT,** | 1:17-cv-01146-JLT-EPG (PC) |
| Plaintiff, | ORDER ON MOTIONS IN LIMINE |
| **v.** | (Docs. 120, 121, 122, 123, 124, 125,126, 127) |
| **OLGA BEREGOVSKAYA,** | |
| Defendants. | |

The parties submitted motions in limine regarding evidence expected to be presented at trial beginning on February 18, 2026. The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618.

## I. FACTUAL BACKGROUND

Tiante Dion Scott claims that Dr. Olga Beregovskaya was deliberately indifferent to his serious medical need in violation of the Eighth Amendment. In particular, the question presented is whether Dr. Beregovskaya acted improperly by failing properly treat plaintiff's claims that he had been stabbed in the neck.

## II.    LEGAL STANDARDS GOVERNING MOTIONS IN LIMINE

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). The

1

Ninth Circuit explained motions in limine allow parties to resolve evidentiary disputes ahead of trial "before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009).

Motions in limine seeking the exclusion of broad categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "a better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. *Sperberg*, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible, such as for impeachment or if

the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

### III.   DISCUSSION

#### A.  The plaintiff's motions

##### 1.   Motion in Limine No. 1 (Doc. 120) – Evidence of convictions not resulting in his current incarceration

The plaintiff seeks to exclude evidence of his past convictions that were incurred more than ten years ago, and which are not convictions giving rise to his current incarceration. (Doc. 120 at 4-5)

Federal Rule of Evidence 609 provides that a testifying witness's character for truthfulness may be attacked by evidence of a criminal conviction for a crime that is punishable by imprisonment for more than one year and for any crime proving a dishonest act or false statement. Fed. R. Evid. 609(a). The rule limits the use of convictions where it has been more than ten years since the conviction or release from confinement for it, whichever is later. Fed. R. Evid. 609(b). "[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." *United States v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007) (quoting *U.S. v. Rubio*, 727 F.2d 786, 797 n.5 (9th Cir. 1983)). "Generally, only the prior conviction, its general nature, and punishment of felony range are fair game for testing the [witness's] credibility." *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (quoting *U.S. v. Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996)) (quoted text in both decisions referred to "defendant's credibility" specifically).

The plaintiff asserts that he was convicted in 1995 for felony violation of California Health and Safety Code Section 11351.5 for Possession for Sale or Purchase for Purposes of Sale Cocaine Base and in 2002 for a felony violation of Conspiracy to Possess a Controlled Substance under the laws of the State of Nevada (NRS 453.401). The plaintiff reports that he was placed on probation for five years as to the 1995 conviction and was sentenced to 48 months as to the 2002

conviction. *Id*. at 4. The plaintiff argues that "more than ten years have passed since plaintiff's convictions and release" such that the convictions should not be admitted under Fed. Rules Evid 609(b).

The defendant opposes this motion and argues that the defendant has been in continuous custody since 2006. (Doc. 130 at 2.) The defense argues that the plaintiff admits to having served a term of incarceration as to the 1995 conviction due to a violation of the terms of probation and served 48 months as to his 2002 conviction. *Id.*

Federal Rule of Evidence 609 allows a witness' character for truthfulness to be attacked by evidence of a criminal conviction for a crime that is punishable by imprisonment for more than one year and for any crime proving a dishonest act or false statement. Fed. R. Evid. 609(a). The Rule limits the use of convictions where it has been more than 10 years since the conviction or release from confinement for it, whichever is later, "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

The Court is stymied by the motion and the opposition to it. Neither side provides the Court clear information as to when the plaintiff was released from custody on either of his 1995 or 2002 convictions or when he entered custody related to his current term of incarceration. Though, for example, he served four years on his 2002 conviction, this does not mean he was in custody from 2002 until 2006. He may have entered custody when he was arrested and received credit for this time served when he was finally sentenced after having been convicted in 2002. Thus, he could have been released from confinement in 2004 or 2005. Any probation violation for his 1995 conviction, could have been completed in 2004 or 2005 also. If this is the case, his release from custody on these charges is more than 10 years in the past.

In addition, the fact that he served some amount of time for a probation violation, does not mean, necessarily, that this makes the 1995 conviction admissible under Rule 609. If his placement in custody was due to a technical violation, this would not suffice. *See United States v. Wallace,* 848 F.2d 1464, 1472 (9th Cir. 1988) (holding that a probation violation must be

4

"substantively related or parallel to the original [ ] conviction" to bring it within the time limits of Rule 609(b)).

Because the motion and the opposition fail to demonstrate conclusively that it has or has not been ten years since the plaintiff was released from custody on his 1995 and 2002 convictions, the Court **RESERVES** ruling on this motion until such evidence is produced. However, of course, these convictions **may not** be introduced absent the foundational showing required by Rule 609. Thus, before this evidence may be introduced, the proponent must produce this foundational evidence outside the presence of the jury and **in advance** of any attempt to introduce this evidence.

2. **Motion in Limine No. 3 (Doc. 120 at 6-7) – Evidence of convictions not resulting in his current incarceration**

The plaintiff seeks to exclude any evidence that he has filed other lawsuits while in custody. (Doc. 120 at 6-7) The plaintiff argues that these filings constitute hearsay, they are unduly prejudicial or are improper evidence of his character for litigiousness.

The defense argues that the plaintiff's complaints bear on the issues here. (Doc. 312) The defendant cites first to plaintiff's argument in a habeas petition he filed in which he complained about a prosecutor vouching for the credibility of the witnesses. *Id*. at 2. The defense argues that this speaks to the plaintiff's understanding of the litigation process. *Id*. at 2-3. Even if it does, the Court cannot see how this bears on any issue in this litigation, including the plaintiff's credibility.

The defense also provides an excerpt from another filing in which he asserts, "Naturally, if I had been cut by a blade or sharp weapon, blood would have been clearly present and identifiable (sic)…no blood was present and the positioner (sic) of wht (sic) is said to be a scratch on the inside of the hand." (Doc. 132 at 2-3) The Court understands that when the plaintiff was presented to the defendant for treatment, there was a scab on the wound and the injury was days past when it was inflicted. Thus, the Court is not certain how the plaintiff's opinion that a cut from a blade or sharp instrument would cause bleeding bears on the issues presented here. Even still, these statements are from a party and are not hearsay. Fed. R. Evid. 801(d)(2). They may be impeaching, though the Court cannot say at this time whether, in fact, they are. Thus, the Court

5

**GRANTS** the motion as it relates to the plaintiff's character for litigiousness, because the Court sees no relevance for this evidence nor is there a showing under Rule 404(b) how this evidence would be admissible. As to the use of the material for impeachment purposes, the ruling is **RESERVED.**

3. **Motion in Limine No. 6 (Doc. 120 at 7-8) – Dr. Ritter's opinion as to whether the various providers treating the plaintiff after the treatment by the defendant met the standard of care**

The plaintiff seeks to preclude the defense from asking plaintiff's expert, Dr. Ritter, about whether other treatment professionals committed malpractice, exhibited deliberate indifference or failed to meet the standard of care when they treated the plaintiff. (Doc. 120 at 7-8) The plaintiff contends that these opinions are irrelevant because they relate to defendants who are no longer in the case and fun afoul of Federal Rules of Evidence 403 because presenting this evidence would constitute an undue waste of time. *Id*.

The defense agrees that it does not intend to ask Dr. Ritter about whether the treatment provided by medical professionals before the defendant encountered the plaintiff met the standard of care; she intends to inquire only as to medical providers who provided care to the plaintiff after she saw him but before a doctor ordered a CT scan. (Doc. 133 at 1) The defense argues that Dr. Ritter contends that the defendant and the radiologist who reviewed the x-ray she ordered, failed to meet the standard of care. *Id*. at 2. Apparently, Dr. Ritter has opined also that each of the providers who saw the plaintiff after this point and until the CT was ordered—on at least five occasions—committed malpractice. *Id*.

The defense argues, and the Court agrees, that the standard of care "is the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession the same or similar circumstances. CACI 501." *Id*. at 2-3. By offering this evidence— that these subsequent providers each chose not to order CT scans despite what they were told and saw (Doc. 133 at 3)—the defense seeks to impeach Dr. Ritter's understanding of the standard of care. This is permissible. Thus, the motion is **GRANTED** as to the medical providers who saw the plaintiff before the defendant and **DENIED** as to medical providers who saw the plaintiff

after the defendant and who did not order a CT scan.

**4. Motion in Limine No. 8 (Doc. 120 at 8-9) – Opinions of experts offered after their depositions**

The plaintiff seeks to preclude the introduction of any opinions of experts offered after their depositions were taken. (Doc. 120 at 8-9) Though this is a proper motion, the plaintiff fails to set forth any new opinions offered by the defense experts. He complains that after radiologist Dr. Vikram Shaker submitted to his deposition, he produced "[a] new Power Point including various images depicting various types of retained foreign bodies." *Id*. at 9. He reports also that after his deposition, Dr. Neeki "produced a new scientific article and a Power Point presentation including multiple peer reviewed publications." *Id*. "Plaintiff anticipates that these opinions relate directly to the standard of care and whether Dr. Beregovskaya was deliberately indifferent." *Id*. As to neither of these, does the plaintiff describe how they constitute opinions offered by the doctors.

The defense opposes the motion and contends that neither Dr. Shakar nor Dr. Neeki have offered new opinions. (Doc. 134 at 1) Instead, the defense asserts that the table produced by Dr. Neeki is a demonstrative, which summarizes the opinions he expressed at his deposition. *Id*. at 2. Dr. Shakar has also produced a demonstrative, supporting his opinion that x-rays can reveal plastic and glass. *Id*.

The Court agrees that experts may use demonstratives in their testimony, which assist the jury in understanding their testimony. The plaintiff does not assert that at their depositions that either doctor was asked whether they intended to use any demonstrative evidence during their testimonies. The table prepared by Dr. Neeki appears to merely summarize the testimony he gave at this deposition. The .pdfs produced by Dr. Shakar demonstrating that x-rays can discover both glass and plastic likewise appears only to be demonstrative.

As to the peer-reviewed article offered by Dr. Dhakar, this presents a different question. The expert report should have set forth the doctor's opinions and the reasons for them, including a description on anything on which the expert relied to forming his conclusion. Fed.R.Civ.26(a)(2). However, the Court has not been provided sufficient information as to whether Dr. Shakar relied upon this article or whether he listed this document as a basis for his opinion. Thus, the motion is

7

**DENIED** as to the table produced by Dr. Neeki and as to the .pdfs produced by Dr. Shakar. The Court **RESERVES** its ruling as to the peer-reviewed article identified by Dr. Shakar.

5. **Stipulated Motion in Limines Nos. 2, 4, 5, 7**

The parties have agreed that these motions should be granted. Thus, the Court **GRANTS** the following motions:

**No. 2 -** That defendant be precluded from mentioning or offering evidence regarding criminal charges against plaintiff not resulting in criminal convictions under Federal Rules of Evidence Rules 403 and 609.

**No. 4 -** That defendant be precluded from mentioning or offering evidence regarding plaintiff's prison disciplinary history under Federal Rule of Evidence Rule 403.

**No. 5 -** That defendant be precluded from mentioning or offering evidence regarding plaintiff having genital herpes under Federal Rule of Evidence Rule 403.

**No. 7 -** That defendant's expert Vikram Shaker, M.D., be precluded from testifying regarding the standard of care of Dr. Bergovskaya, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 and following cases, as he is a radiologist and has not treated patients in an acute care setting.

B.  **The defendant's motions**

1. **Motion in Limine No. 1 and 3 (Doc. 121; Doc. 123) – Exclude/limit the testimony of Dr. Ritter**

The defendant seeks to exclude the testimony of Dr. Ritter because he has never practiced medicine in a prison setting. (Doc. 121 at 2-3) The defendant contends that he lacks the requisite qualification to speak to the issues raised in this litigation. *Id*.

The Court agrees with the plaintiff that Dr. Rittner need not have held the same job as the defendant to be able to speak to the issues presented here. (Doc. 136 at 1-3) Dr. Ritter is a trained and experienced emergency room doctor, which sufficiently qualifies him to offer opinions in this case. The extent to which he lacks an understanding of the facts, or the constraints posed by the prison setting, this goes to the weight of his evidence, not to its admissibility. Thus, the motion on this basis is **DENIED**.

The defense argues that because Dr. Ritter offered his opinion that the defendant committed malpractice but did not act with deliberate indifference, this should preclude him from asserting at trial that the defendant did, in fact, act with deliberate indifference. (Doc. 121 at 3) The Court agrees. However, as the plaintiff points out, whether a doctor failed to meet the standard of care may be probative as to whether she acted with deliberate indifference.

In *Edmo v. Corizon, Inc*., 935 F.3d 757, 786 (9th Cir. 2019), the Court held,

> If, as here, a prisoner establishes a sufficiently serious medical need, that prisoner must then "show the [official's] response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285; *see also Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("ordinary lack of due care" is insufficient to establish an Eighth Amendment claim). In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. To "show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)).
>
> [¶ ]
>
> Accepted standards of care and practice within the medical community are highly relevant in determining what care is medically acceptable and unacceptable. *See Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015); *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) (per curiam). Typically, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987; *see also Gibson*, 920 F.3d at 220. But that is true only if the dueling opinions are medically acceptable under the circumstances. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (a mere "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference," but not if the "chosen course of treatment 'was medically unacceptable under the circumstances' " (alterations in original) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996))).
> "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). Nor does it suffice for "correctional administrators wishing to avoid treatment ... simply to find a single practitioner willing to attest that some well-accepted treatment is not necessary." *Kosilek*, 774 F.3d at 90 n.12. In the final analysis under the Eighth Amendment, we must determine, considering the record, the judgments of prison medical officials, and the views of prudent professionals in the field, whether the treatment decision of responsible prison authorities was medically acceptable.

The defense argues also that because Dr. Ritter's opinions are based upon his misunderstanding of the facts—that the object found in plaintiff's neck was plastic rather than glass—he should not be allowed to testify that the use of the x-ray was below the standard of care. (Doc. 121 at 3) The fact that the pathologist found the object to be glass, does not preclude Dr. Ritter from testifying that the standard of care required the defendant to order a CT scan. He testified, and the records bear out, that when the plaintiff saw the defendant, he complained that he had been stabbed in the neck with a "plastic object." (Doc.121-2 at 3) The fact that it turned out to be glass does not necessarily impact how the defendant was obligated to treat it. Thus, once again, it is for the jury to determine the weight to afford Dr. Ritter's testimony—as they will do as to every expert witness—based in part upon the reasons given for the opinion. Ninth Circuit Model Civil Jury Instruction 2.13.

Thus, based on the foregoing, the motion to preclude Dr. Ritter from testifying that the defendant acted with deliberate indifference (Doc. 1) is **GRANTED**. The motion to preclude Dr. Ritter from testifying as to the standard of care or that the failed to meet that standard (Doc. 3) is **DENIED**.

2. **Motion in Limine No. 2 (Doc. 122) – Exclude testimony of the plaintiff's complaints of arm pain**

The defense seeks to preclude Dr. Ritter from opining that the arm pain that the plaintiff complained of related to the injury caused by the stab wound. (Doc. 122) Most notably, the Court granted the defendant summary judgment as to the plaintiff's claim of inadequate medical treatment of the arm and the Ninth Circuit Court of appeal affirmed this judgment. *Id*. at 5 citing Doc. 81 at 5.

The plaintiff opposes the motion and agrees that this evidence cannot be used to suggest that the defendant failed to treat the arm pain properly. (Doc. 136 at 3) The plaintiff argues, even still, that the plaintiff *can* recover damages for the arm pain because it was caused by the neck injury that the defendant failed to treat properly. (Doc. 122 at 5) This argument fails for several reasons.

First, the plaintiff fails to convince the Court that the defendant could be held liable for

10

damages related to the plaintiff's arm pain *even though* she has won a final judgment on this issue. The Ninth Circuit confirmed the judgment of this Court that the defendant did not violate the plaintiff's Eighth Amendment rights related to the *treatment* of his arm pain. (Doc. 81 at 5) Dr. Ritter seems to say that had the defendant referred the plaintiff to a CT scan, this would have resulted in the correct treatment of the arm pain, and the plaintiff contends that this means he can seek damages for the arm pain. This flies in the face of the judgment of this Court as affirmed by the Ninth Circuit Court of Appeals.

Second, the plaintiff presents no evidence that Dr. Ritter opined in his expert report or at his deposition that the acute and chronic arm pain would have been alleviated had the defendant ordered the CT scan. At most, the portion of Dr. Ritter's transcript provided shows that he said that *because* the plaintiff had arm pain and *because* he had the neck injury, that former caused the latter. The fact that the neck injury *could* cause radicular pain is not the same thing as evidence to a reasonable medical certainty that it did.

The plaintiff bears the burden of proof to show that the arm pain was caused by the delay in treatment rather than from the actual stabbing injury or other injury he suffered in any of the four fights he was in before he had contact with the defendant. Dr. Ritter admits, at least implicitly if not explicitly, that he can't rule out an injury to the arm caused the pain[1], but because the plaintiff never underwent an MRI—which would have revealed whether there was an injury—he attributes the arm pain to the neck injury. This is insufficient. It shifts the burden of proof, it fails to meet the *Daubert* standard and, assuming Dr. Ritter's report did not list this opinion, it violates Rule 26. For all of the reasons set forth here, the motion is **GRANTED**.

### 3. Motion in Limine No. 4 (Doc. 124) – Exclude testimony of whether imbedded plastic can be detected on x-rays

The defense seeks to preclude evidence that x-rays cannot detect plastic in soft tissues. (Doc. 124 at 1) The defense notes that in this case, plastic was not found in plaintiff's neck. *Id.*

---

[1] The defense points out that the plaintiff has continued to complain of arm pain even after the shard was removed from his neck, and he has been diagnosed with tendonitis. (Doc. 122 at 3)

Instead, the object removed from his neck was glass. *Id.* Given this, the defense argues that the ability of an x-ray to detect plastic is not pertinent. *Id*.

The plaintiff seems to agree that x-rays *can* detect plastic, but that plastic found in an x-ray is "missed 85% of the time." (Doc. 136 at 5) Thus, the plaintiff argues that a CT scan should be ordered when an x-ray fails to reveal the plastic, and the presence of plastic is suspected. The plaintiff argues that because he told the defendant he was stabbed with plastic, she should have ordered a CT knowing that the x-ray would be insufficient or when the x-ray did not reveal any foreign bodies in the plaintiff's neck.

Upon this context and as noted above, the issue is not whether there was or was not plastic in the plaintiff's neck; the issue is whether he told the defendant he was stabbed with plastic and what a doctor who seeks to meet the standard of care would do in that instance. Given this factual circumstance, the motion is **DENIED**.

4. **Motion in Limine No. 5 (Doc. 125) – Exclude testimony of Dr. Barkdull due to the failure to comply with Rule 26.**

The defense seeks to preclude the plaintiff from offering the testimony of Dr. Barkdull due his failure to properly disclose this expert. (Doc. 125) Defense counsel notes that though he attended the deposition of Dr. Barksdull, he was unaware of what would be at issue at the deposition. *Id*. at 2-3.

The failure to comply with the rules regarding expert witnesses exposes that party to sanctions under Federal Rule of Civil Procedure 37(c). Rule 37(c) precludes the offending party from using the witness at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which "gives teeth" to the disclosure requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001) (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)). The burden is on the party facing exclusion of its evidence to prove the failure was substantially justified or harmless." *Goodman v. Staples the Office Superstore, L.L.C.*, 644 F.3d 817, 827 (9th Cir. 2011), citing *Yeti by Molly, Ltd.*, 259 F.3d at 1107.

The plaintiff admits that he failed to comply with Rule 26. (Doc. 136 at 7-8) Though he listed Dr. Barkdull as a treating physician on the disclosure, he failed to outline "the facts and opinions to which the witness is expected to testify" despite the requirements of Federal Rules of Civil Procedure 26(a)(2)(C)(ii)). *Id.* Counsel reports that even still, she conferred with defense counsel before the deposition, and she "explained that the testimony sought from Dr. Barkdull would relate to the treatment that Dr. Barkdull provided to plaintiff." (Doc. 136-2 at 1) While this indicates that the plaintiff disclosed the general topic on which the plaintiff would examine Dr. Barkdull, there is no showing that this discussion included the facts to which Dr. Barkdull would testify nor what his opinions would be. This does not comply with Rule 26.

On the other hand, there is no dispute that the defense had a full opportunity to examine Dr. Barkdull at his deposition. There is no indication that, despite that defense counsel was not clear as to the facts and opinions Dr. Barkdull would offer before the deposition began, there is no indication that this impeded the defense examination in any way, and the defense did not seek a second deposition. Thus, the Court concludes that the meet and confer effort in advance of the deposition, though it did not cure the deficiency in the disclosure did not create prejudice to the defense. Thus, the motion is **DENIED**. That being said, as a treating physician, the evidence from Dr. Barkdull is limited to what he perceived. The plaintiff will not be allowed to provide any evidence from Dr. Barkdull that strays into expert opinion, such as causation, diagnosis or prognosis.

### 5. Motion in Limine No. 6 (Doc. 126) – Exclude evidence of punitive damages

The defense seeks to preclude the plaintiff from seeking punitive damages. (Doc. 126 at 2) The defendant asserts that the plaintiff did not identify punitive damages in his Rule 26 disclosure[2]. *Id*. at 2. The defendant admits, however, that initial disclosures were excused in this case but reports that the plaintiff's counsel made such a disclosure four months after being appointed. *Id*. at 2. In this disclosure, counsel failed to list the punitive damage claim. *Id*.

---

[2] The Court has already amended the pretrial order to indicate that the plaintiff will seek punitive damages because it was apparent that he had pleaded these damages in the operative complaint (Doc. 128), so the Court disregards the arguments made here that related to the pretrial statement (Doc. 126 at 2)

The Court notes that when the voluntary disclosure occurred, discovery was nearly complete. (Doc. 95) Because the case had been ongoing since 2017 due to two intervening appeals, the matter has had two periods of discovery. The first began on November 5, 2020 and continued through August 9, 2021. (Doc. 50; Doc. 55) The second began on May 15, 2025 and continued through October 10, 2025. (Doc. 95) The second discovery period was granted because the plaintiff was appointed counsel and because the defense attorney was replaced—and current counsel took over. (Doc. 94) Given this, there can be no argument that the defendant was mislead as to whether the plaintiff sought punitive damages in this case.

The defense also argues that the evidence is insufficient to support a punitive damages award. (Doc. 126 at 3) The Court cannot say as a matter of law at this time, that there is no evidence upon which a jury could rely to conclude that punitive damages are appropriate. Thus, the motion is **DENIED.** However, as is this Court's practice and because it preserves this Court' limited resources, it will bifurcate the issue of the amount of punitive damages from the issue of whether punitive damages may be awarded.

### 6. <u>Motion in Limine No. 7 (Doc. 127) – Exclude certain exhibits</u>

The defense seeks to exclude many of plaintiff's exhibits from trial. (Doc. 127) The plaintiff opposes the motion and notes that before the motion was filed, the parties had not met and conferred. Many of the disputes have been resolved. Many exhibits will not be offered into evidence. Thus, the Court **DEFERS** ruling on these objections until trial.

**ORDER**

For the reasons set forth, the Court **ORDERS**:

1.    Plaintiff's motion in limine No. 1 (Doc. 120 at 4-5) is **RESERVED**;

2.    Plaintiff's motion in limine No. 3 (Doc. 120 at 6-7) is **GRANTED IN PART AND RESERVED IN PART**;

3.    Plaintiff's motion in limine No. 6 (Doc. 120 at 7-8) is **GRANTED IN PART AND DENIED IN PART**;

4.    Plaintiff's motion in limine No. 8 (Doc. 120 at 8-9) is **GRANTED IN PART AND RESERVED IN PART**;

14

5.      Plaintiff's motions in limine No. 2, 4, 5, and 7 (Doc. 120 at 2) to which the defense has stipulation, the motions are **GRANTED**.

6.      Defendant's motion in limine No. 1 (Doc. 121) and No. 3 (Doc. 123) are **DENIED IN PART AND GRANTED IN PART**;

7.      Defendant's motion in limine No. 2 (Doc. 122) is **GRANTED**;

8.      Defendant's motion in limine No. 4 (Doc. 124) is **DENIED**.

9.      Defendant's motion in limine No. 5 (Doc. 125) is **DENIED**.

10.     Defendant's motion in limine No. 6 (Doc. 126) is **DENIED**.

11.     Defendant's motion in limine No. 7 (Doc. 127) is **RESERVED.**

IT IS SO ORDERED.

Dated:    **February 9, 2026**

UNITED STATES DISTRICT JUDGE

15